PEARSON *v.* WALLACE.

1. FRAUD AND DECEIT—CONSPIRACY—EVIDENCE—ADMISSIBILITY.

In an action for fraud and deceit, with a count alleging conspiracy, based upon false representations to plaintiff by defendants as to the value of certain gas bonds accepted by plaintiff in exchange for a farm which he conveyed to one of the defendants, and in which transaction the other defendants profited, evidence as to statements and correspondence of one defendant, not in the presence of other defendants, was admissible, as tending to prove concert of action and similar false representations made by each of them to plaintiff.

2. SAME—EXPERT WITNESSES.

Testimony by an engineer, who had made an appraisement of the property of the gas company a year or two before, as to the value of the property of the company, and therefore as to the value of the bonds, based in part upon a map in the office of the company, shown to him by the manager, was not objectionable as incompetent, irrelevant, or hearsay.

3. SAME—EVIDENCE—ADMISSIBILITY.

Oral testimony that the property of the gas company was then in the hands of a receiver, who was operating the plant, was admissible for the purpose of showing whether the company was in possession of its property, and as bearing upon the value of its bonds, although not admissible for the purpose of proving the legality of the appointment of the receiver, which should be proved by the record.

4. SAME—BOOKS OF ACCOUNT—EVIDENCE.

There was no error in admitting in evidence the books of the company, and in permitting a witness to testify to what was contained in them, for the purpose of showing the condition of the company and the extent of the business carried on by it, where an expert testified that they apparently showed all receipts and disbursements, also corporate meetings and what was done at them.

5. APPEAL AND ERROR—PARTY APPEALING—HARMLESS ERROR.

Upon a record showing that only one of several defendants

appealed from a judgment against all of them, error in the court below in the rejection of evidence bearing on the separate defense of one of the defendants not appealing, will not be considered by this court.

6. TRIAL—INSTRUCTIONS—REQUESTS TO CHARGE.

There was no error in the refusal of requests to charge, where the court fully and carefully presented to the jury the issues and the governing law, embodying in his charge the substance of any request which ought to have been given.

7. SAME—NEW TRIAL—DAMAGES.

Evidence that plaintiff gave a valuable farm, worth at least $5,500, in exchange for bonds secured by property worth less than one-half the face value of the bonds, that it was represented to plaintiff that the by-products of the company which issued the bonds would pay operating expenses, while in fact there were no by-products of value, and the company had never earned enough to pay operating expenses and interest on its bonded debt, *held*, sufficient to support a judgment for plaintiff.

Error to Livingston; Miner, J. Submitted October 11, 1918. (Docket No. 35.) Decided December 27, 1918.

Case by George J. Pearson against Henry M. Wallace and others for fraud and deceit. Judgment for plaintiff. Defendants bring error. Affirmed.

*James H. Pound* and *Francis J. Shields*, for appellants.

*Louis E. Howlett* and *W. P. Van Winkle*, for appellee.

OSTRANDER, C. J. Plaintiff owned a farm of 120 acres in the township of Hamburg, Livingston county, which, in December, 1915, he conveyed by warranty deed to defendant George Gallup, for a recited consideration of $5,650. What plaintiff received for the land was eleven bonds, issued by the Iron Mountain

Light & Fuel Company, for $500 each, the sum of $150 being paid as a commission to the agent, defendant Whaley, who made the sale. Defendant Gallup soon mortgaged the land, but held the title for about a year, when he conveyed it to another. The Iron Mountain Light & Fuel Company is a Michigan corporation, organized in 1906, with a capital of $150,-000, and $149,500 of the capital stock was issued to Alfred W. Glass for the transfer by him to the company of a franchise granted to him by the city of Iron Mountain, Michigan, October 23, 1905. The remaining 5 shares of stock seem to have been sold for $500 cash. Among the original incorporators was defendant Wallace, who seems to have been connected with the company in some capacity until some time in the year 1914. There was an early issue of bonds to the amount of $100,000. In 1912, there was a new issue of bonds for $125,000, used to retire the old issue and pay certain current liabilities, and in July, 1914, authority was given the company to issue $25,-000 additional bonds. The bonds were secured by a mortgage of the company's property to the Union Trust Company, of Detroit, trustee. The records of the company show no sales of bonds at par and do show all bonds sold below par to net the company 80 per cent. of par, plus accrued interest. Less than $69,000 of the $120,500 received by the company for stock and bonds sold was invested in a plant. The remainder was expended in various ways. The books of the company do not show that its operations produced any net income; they do show that it never earned enough to pay operating expenses and interest upon its outstanding bonds. Testimony for plaintiff tended to prove that the reproduction value of the plant in December, 1915, was $65,500, and its appraised value $55,200. The bonds which plaintiff acquired were issued in 1912, due in 25 years, and call for payments

of interest January 1st and July 1st of each year. There is testimony tending to prove that each of them was at some time held by defendant Wallace. The rate of interest is 5 per cent. Interest coupons were, or are, attached.

It is said in the brief for appellee that—

"There had been a default in the payment of the interest, the company was being operated by the Union Trust Co. of Detroit,"

—but no reference is made to the record and we have not discovered to what time interest was paid. It does appear that at the time of the trial the property was being operated by the Union Trust Company. Plaintiff testified that—

"January 1, 1917, when the coupons became due, I went to Ann Arbor and clipped the coupons from the bonds and counted the coupons and the bonds, placed the bonds back in my deposit box and presented the coupons to the cashier; he told me there wasn't any use; that they had sent in some coupons and that they were returned. I had had no suspicion of the bonds up to that time."

From this and other testimony it is assumed that plaintiff was paid the interest on the bonds theretofore accruing, and this agrees with the conclusion stated in the brief for appellant.

It is the theory of plaintiff that defendant Whaley, a real estate dealer in Ann Arbor, with whom he had listed his farm for sale, defendant Hammond, who was a bond salesman and occupied offices adjoining to or near Whaley's office, George Gallup, to whom the farm was conveyed, and Henry Wallace, who paid the rent of the Hammond offices, were acting together, in an attempt, a successful one, to trade him worthless bonds for his farm. His declaration, which was filed in March, 1917, alleges that the said defendants, with

203—Mich.—40.

intent to cheat and defraud him and induce him to transfer his farm to them, or to one of them, and receive in exchange therefor the bonds of certain gas companies, or of one of them, made certain false and fraudulent representations to him. The alleged representations are set out and as made by all of defendants. This in the first count of the declaration. In the second count, conspiracy of the defendants is alleged, to accomplish the same purpose in the same way. Plaintiff, retaining the bonds, seeks to recover his damages, and asserted and insists that the measure thereof is the difference in the value of the bonds as represented by defendants and their actual value when plaintiff acquired them. That this is the measure of his damages is not denied.

The printed record shows a plea filed by defendant Wallace alone. This agrees with the return to the writ of error filed with the clerk of this court. The printed record and the said return contain no evidence that the other defendants were defaulted. They joined in suing out the writ of error, and, upon its face, the brief for appellant is filed for all of them. We consider the case as if defendant Wallace alone has appealed.

The testimony for plaintiff tends to prove a concert of action of the defendants and similar false representations made by each of them to plaintiff. At various times several of them were present when some of the representations were made. Defendants Gallup, Hammond, Wallace, and Whaley gave testimony which, if believed, tended to negative any actual concert of action and the making of false statements respecting the bonds and their value. Upon all of the testimony, the case was one for a jury as to the liability of all defendants, it was submitted to a jury, and a verdict for plaintiff for $4,408.59 against all defendants was returned, upon which a judgment for a

like sum was entered. A motion for a new trial was overruled, the denial excepted to, and in this court 43 assignments of error are presented.

A number of errors are assigned upon rulings admitting statements and correspondence of one defendant, not in the presence of other defendants, the exceptions being based upon the reason that a conspiracy had not first been proven. The statements themselves tend to prove concert of action. Plaintiff's testimony with other testimony tends to prove that the suggestion that a farm, listed with him to be sold for cash, be traded for gas bonds, came from Whaley, the real estate broker. Consideration of this suggestion brought Hammond and Wallace and Gallup upon the stage, not all at once, but in due season. That these defendants had with each other certain relations is not disputed. If plaintiff is to be believed, each exerted himself to induce in plaintiff the belief that the bonds were as good as cash. The warranted inference from plaintiff's testimony and from what actually occurred is that Wallace got rid of some bonds and in fact acquired an interest in the farm, while Whaley and Hammond divided a commission as upon a sale of the farm, and each cleverly supplemented the other by the representations made in the effort to bring about the exchange which was made. There is some testimony which supports the conclusion that each knew that the bonds were not what they were represented to be. But, however this may be, it is proven that they made representations respecting them which were in fact untrue, and a general verdict against all was returned.

It is assigned as error that an engineer was permitted to testify to facts based upon a map in the office of the gas company at Iron Mountain and to measurements, etc., the objection made to the testimony being that no proper foundation for its admis-

sion was laid and that it was incompetent, immaterial, irrelevant and hearsay. The witness was called to prove the value of the property of the gas company and, therefore, the value of the bonds. He had made an appraisement of the property of the gas company, in the year 1915, for the Grand Rapids Trust Company. He testified about the plant, buildings, etc., and said there was approximately nine miles of gas mains. It appears that he arrived at this conclusion from a map, a part of the records of the gas company, showing the situation and extent of its mains. The map, the witness testified, was shown to him by the manager, the man in charge of the company. The witness gave his opinion, his estimate of the value of the property, and stated the factors which he used. We find in the testimony nothing which is incompetent, irrelevant or hearsay. There may have been gas mains besides those indicated by the map. If so, it was a fact to be proven.

A witness was called by plaintiff who testified that the Union Trust Company was then receiver for the Iron Mountain Light & Fuel Company. The objection to the testimony was that it was incompetent and immaterial, and it is argued in the brief that the fact could not be shown by parol. He testified further that the Union Trust Company was in possession of the plant, operating it. To this testimony the same objection was made. This testimony was important as tending to prove, with other testimony, the value of the bonds. Technically, of course, the fact that a receiver of property has been appointed ought to be proved by the record. That is the best evidence. Whether a certain corporation is in possession of property may be proved by any one who knows the fact. Assuming that it was error to receive the testimony of the witness to the effect that the property was in the hands of a *receiver*, the judgment should

not therefore be reversed. The fact was not disputed. The essence of the testimony was, not the legality of the appointment of a receiver, but was that the trustee of the bondholders had, for some reason, taken possession of the property and was conducting its business.

Nor do we find reversible error in the rulings admitting the books of the gas company in evidence and in permitting a witness to testify to what is contained in them, with his mathematical calculations based upon what the books disclose. If a gas company keeps books, if, as an expert in this case testified, the books of account show, apparently, all receipts and disbursements of money, if they show corporate meetings and, apparently, what was done at the meetings, no reason is perceived for refusing to permit their contents to be given to a jury to prove the condition of the company and the extent of the business carried on by it.

The court was right in refusing at the close of plaintiff's case to direct a verdict for any of the defendants. The reasons for this conclusion have been stated.

It is complained that the defendant Whaley was not permitted to answer whether he had ever owned any of the bonds of this gas company. As affecting his own defense, it would seem that the question was a proper one and that he should have been allowed to answer, although we find no claim made that he ever owned any of the bonds or was doing more than aiding some one else to dispose of the bonds for the farm. As affecting the other defendants, and especially the defendant Wallace, the value of the answer or the prejudicial result of the ruling is not apparent. Defendant Whaley is not, upon this record, one who can question the judgment. In the only brief filed for appellants it is said,

"I insist that both these men, Whaley and Ham-

mond, are not connected with the defendant Wallace, whom I represent."

This is, of course, addressed by counsel to another point, but it confirms, what the record indicates, that it is Wallace alone who is rightfully appealing.

All other assignments of error based upon rulings admitting and rejecting testimony have been examined. We find no error in the rulings complained about.

Passing to assignment No. 25, it is:

"The court erred in permitting the jury to speculate as to the amount of damages resulting from the sale of the bonds alleged to have been sold upon misrepresentation by the defendants, as any representations relied upon as to the bonds could not be performed within one year of the making of the same and the amount being above $50, must be in writing, or plaintiff could not recover; and the bonds on their face show that they are not to become due and payable until twenty years and upwards from the time the representations were claimed to have been made and there would be no way of establishing their then value."

Of this it is said in the brief:

"Assignment 25 interposes the statute of frauds, which, as to the defendant Wallace, it seems to me, as well as all the rest of the defendants, is a complete defense. 3 Compiled Laws of Michigan 1915, § 11981, subds. 1 and 2, and cases cited. This error must be apparent."

It is not perceived that the statute referred to has any application here.

We have read the requests to charge preferred on the part of defendants and the charge of the court. Without setting them out here, we content ourselves with saying that the charge was a full and careful presentation of the issues, and of the governing law, favorable in some respects to defendants. The substance of any request which ought to have been given

is embodied in the charge, the case is a simple one, the issues not complicated or obscure. That plaintiff gave a valuable farm in exchange for the bonds is admitted. The parties agreed upon a value of at least $5,500 for the farm. Undisputed evidence shows that the bonds were not worth par and had never been, that the company which issued them had never earned enough to pay operating expenses and interest on its bonded debt. There was testimony tending to prove that the property securing the issue of bonds was worth less than one-half the face value of the bonds. In addition there was testimony tending to prove that it was represented to plaintiff that the company which issued the bonds, which made water gas, which had no by-products of value, received enough for the by-products to pay operating expenses, that the bonds were as good as cash or as wheat in the bin, and were in this case somewhat difficult to secure. Assuming that the defendants were engaged, in concert, in getting rid of the bonds for the owner of them, what was said by each amounted, in the mass, to a cunning presentation of the singular advantages which the holders of such bonds possessed. Whether the claimed representations were made by one or several of defendants, whether they were false or true, whether plaintiff relied upon them to his injury, these questions the court submitted to the jury, plainly, with applicable rules for framing the verdict as the facts were found to be.

We find no reversible error, and therefore affirm the judgment.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.