*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JANE E. MEYERING,

       Plaintiff-Appellant,

v

PORSCHE CARS NORTH AMERICA, INC. and
LANSING AUTOMOTIVE, LLC, d/b/a
OKEMOS AUTO COLLECTION,

       Defendants-Appellees,

and

DEMARS & ASSOCIATES, LTD,

       Defendant.

UNPUBLISHED
February 7, 2019

No. 341815
Ingham Circuit Court
LC No. 16-000661-NZ

Before: METER, P.J., and K. F. KELLY and GLEICHER, JJ.

PER CURIAM.

Michigan's lemon law provides two potent remedies for motor vehicle consumers aggrieved by a manufacturer's failure to rectify a defect within a reasonable time: replacement of the vehicle or a full refund. An unhappy purchaser must show that she timely reported the defect to the manufacturer, the defect "continues to exist," and the car underwent "a reasonable number of repairs[.]" MCL 257.1403(1). The magic number for a "reasonable number of repairs" is four. Under the statute, the reasonableness threshold is met when a vehicle has been subjected to repair four or more times for the same problem within two years of the defect's emergence. MCL 257.1403(5)(a). In other words, after four unsuccessful attempts at a cure, a presumption arises that the car is a lemon.

The trial court directed a verdict after the jury heard plaintiff Jane Meyering's lemon-law proofs, finding that she failed to establish that the defect in her car's heating and cooling system continued to exist after the vehicle's fourth visit to the dealership. In reaching this conclusion, the trial court disregarded Meyering's testimony. When reviewing the grant of a directed

verdict, we must consider the *nonmoving* party's version of events untainted by the movant's claims. The trial court failed to adhere to this fundamental rule. Meyering's breach-of-warranty claim met a similar, and also improper, fate. We reverse both holdings and remand for a new trial of all claims.

I

Jane Meyering bought a new Porsche Cayenne in 2015. In January 2016, she brought the car to the seller, defendant Okemos Auto Collection (Okemos), complaining that the climate control blower did not work properly. Meyering testified that while she was driving, cold air suddenly began to pour from the front vents and she was not able to stop the flow or to turn it down. A representative of the dealer picked up the car from Meyering's home in Byron Center and drove it to the shop. The driver later reported to Meyering that he "froze on the ride over."

Okemos kept the car for four days. According to the invoice, no problem with the blower unit was found. A few days later, Meyering brought the car in a second time, again complaining that the "defrost kicked back on high again." She testified, "Ice cold air was shooting out again. And then all the windows frosted over. I was on a busy road. I couldn't see." This time, a mechanic found "faults" when he examined the blower motor assembly. The mechanic replaced the front blower motor assembly and returned the car, documenting that it "worked as designed."

About three weeks later, Meyering brought the car in for a third time. She reported that the blower motor did not come on at times, and at other times stayed on high speed. During this visit, an Okemos mechanic contacted the Porsche "techline." The mechanic characterized Meyering's description of the problem as consistent with "a random issue." The techline representative advised the mechanic to investigate whether the harness for the car's HVAC system had corroded. The mechanic found corrosion on the harness and one of the vent motors. He replaced the corroded components, including the "a/c control unit." The car remained in the shop for almost a month while the parts made their way to Okemos from Germany. The dealership's notes indicate the "situation" had the "potential for a Lemon Law buyback."

In May of that same year, Meyering brought the car in for a fourth time. She reported that she could not get the climate control blower to come on "at times," and the car was uncomfortable. She testified that "it was getting quite warm in the car. I couldn't get it to cool." After testing the climate control, a different mechanic—Marlon Olivas—recorded that the blower worked just fine and no "faults" were detected. Olivas also contacted the techline. A techline representative noted that the vehicle "previously had corrosion found on the wiring harness for the flap motor connectors," and recommended that those be rechecked. Olivas did not recall having rechecked them. He asserted that he could not "confirm" the problem that Meyering had reported, and that he considered it an "open" issue. Nothing more was done to the car.

Meyering refused to drive the vehicle when it was returned to her, expressing that she had "lost faith in it" because it was "unreliable." Her husband, Ron Meyering, "occasionally" drove the car thereafter. He did not detect any problems, but did not recall whether he ever tried to engage the air conditioning.

The trial court granted defendants' directed verdict motion involving Meyering's lemon-law claim, ruling that "there is no evidence that the car wasn't fixed. I think that's the essential element." The court also directed a verdict on Meyering's claim for breach of warranty; we address those facts and the court's ruling in section IV.

### III

Meyering's lemon-law claim comes down to a single question: did the defect in the vehicle's heating and cooling system continue to exist after the fourth visit to the dealership? Meyering claims that the car's air conditioning did not work when she brought the car in for the fourth time. Olivas said it did. When considering defendants' directed verdict motion, the trial court was obligated to believe Meyering.

Time and again, our Supreme Court has reiterated "a well-established principle of law: The jury, not the trial judge, is the trier of fact. Whenever a fact question exists, upon which reasonable persons may differ, the trial judge may not direct a verdict." *Caldwell v Fox*, 394 Mich 401, 407; 231 NW2d 46 (1975). Moreover, in deciding the motion, the trial court was obligated to disregard evidence that conflicted with Meyering's testimony about the defect:

> In passing upon a motion for directed verdict, a trial judge must consider the evidence in plaintiff's favor *unqualified* by any conflicting evidence. The trial judge is not prohibited from considering evidence presented by a defense witness per se; rather, the judge may not consider evidence from *any* witness to the extent that it conflicts with evidence in plaintiff's favor. [*Locke v Pachtman*, 446 Mich 216, 226 n 8; 521 NW2d 786 (1994).]

These principles find their origin in *Detroit & Milwaukee R Co v Van Steinburg*, 17 Mich 99, 117 (1868), in which Justice Thomas Cooley explained:

> [W]e must look at the case as it appears from the plaintiff's own testimony, unqualified by any which was offered on the part of the defendants, and must concede to him anything which he could fairly claim upon that evidence. He had a right to ask the jury to believe the case as he presented it; and, however improbable some portions of his testimony may appear to us, we can not say that the jury might not have given it full credence. It is for them, and not for the court to compare and weigh the evidence.

These legal principles compel us to consider the case from *Meyering*'s perspective, not through the eyes of Olivas or the other defense witnesses. Meyering is entitled to the benefit of all reasonable inferences from the evidence. "In reviewing a trial court's decision on a motion for a directed verdict, an appellate court is to examine the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the nonmoving party." *Clark v Kmart Corp*, 465 Mich 416, 418; 634 NW2d 347 (2001). The car had a cooling problem when it was brought to the dealership for the fourth time and nothing was done to fix it. The reasonable and obvious inference is that it continued to have a cooling problem when it left.

The United States Supreme Court has highlighted that summary judgment is inappropriate where reasonable inferences support the need for resolution by a jury. Despite that the summary judgment standard is slightly less rigorous than that governing directed verdicts, the Supreme Court's words are instructive:

> The witnesses on both sides come to this case with their own perceptions, recollections, and even potential biases. It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system. By weighing the evidence and reaching factual inferences contrary to [the plaintiff's] competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party. [*Tolan v Cotton*, 572 US 650, 660; 134 S Ct 1861; 188 L Ed 2d 895 (2014).]

Our Supreme Court has made the same point:

> It seems that we must constantly remind those interested in negligence law that a motion by the defendant for a directed verdict presents no question of credibility; also that the trial judge may not select among actual or seeming contradictory statements of a witness given on direct examination and cross-examination what he believes should be applied to the motion. Instead, the movant automatically stipulates that, for the purposes of his motion only, the trial judge may and should apply the submitted evidence . . . "as it appears from the plaintiff's own testimony." [*Schedlbauer v Chris-Craft Corp*, 381 Mich 217, 229; 160 NW2d 889 (1968), quoting *Detroit & Milwaukee R Co*, 17 Mich at 117 (1868).][1]

See also *Nichol v Billot*, 406 Mich 284, 301-302; 279 NW2d 761 (1979) ("It is a basic proposition of law that determination of disputed issues of fact is peculiarly the jury's province. Even where the evidentiary facts are undisputed, it is improper to decide the matter as one of law if a jury could draw conflicting inferences from the evidentiary facts and thereby reach differing conclusions as to ultimate facts.") (citations omitted).

Meyering's testimony and the reasonable inferences that flow from it supply a factual foundation for a jury's conclusion that the car had a defect.[2] Nothing more is required to establish a prima facie case.

---

[1] This is not a negligence case, but the standard is the same.

[2] In addition to the inference that an unfixed problem continues to exist, another set of inferences strengthens Meyering's case. When Meyering first brought the vehicle to Okemos reporting a heating problem, the dealership dismissed her complaint as unfounded. That turned out to be wrong, as the next two visits demonstrated. The dealership's history of incorrectly discounting Meyering's perceptions of the vehicle's function supports that the dealership could have erred

## IV

Meyering also brought claims for breach of warranty and revocation of acceptance under Michigan's Uniform Commercial Code, MCL 440.2608. These claims did not depend on a specific number of visits, or on the continuation of the defect. The trial court dismissed them based on Meyering's alleged failure to introduce evidence of damages, i.e., the diminution in the market value of the vehicle.

Michigan law provides that a consumer may revoke her acceptance of a good "whose nonconformity substantially impairs its value to him if he has accepted it." MCL 440.2608(1). When a buyer "justifiably revokes acceptance:

> the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid
>
> (a) "cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract; or
>
> (b) recover damages for nondelivery as provided in [MCL 440.2713]. [MCL 440.2711(1) (emphasis added).]

Meyering introduced evidence of the purchase price of the vehicle: $99,498.60. This was a proper measure of her damages, regardless of whether she introduced evidence of "cover." Based on the plain language of the statute, her revocation-of-acceptance claim should have gone to the jury.

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." MCL 440.2714(2). Meyering attempted to introduce the testimony of an Okemos employee, Anthony Bonazzi, who offered to buy the car back from the Meyerings for $58,000. Bonazzi explained that this figure was obtained after another Okemos employee had a conversation with an auction buyer. The trial court excluded this evidence.

Regardless of how Bonazzi computed the number, his admission that the Porsche was worth $58,000 to Okemos in trade-in value was decidedly not hearsay. Bonazzi offered a lay opinion of the car's value to a *defendant* in the lawsuit. This could not be "hearsay;" it was clearly a party admission under MRE 801(d)(2). See also *Pearson v Wallace*, 203 Mich 622, 628; 170 NW 72 (1918) ("The witness gave his opinion, his estimate of the value of the property,

---

the fourth time, too. And the dealership's expressed awareness that the "situation" had the "potential for a Lemon Law buyback" only enhances that inference.

and stated the factors which he used.  We find in the testimony nothing which is incompetent, irrelevant, or hearsay.").  Accordingly, Meyering's breach-of-warranty claim also should have gone to the jury.

We reverse and remand for a new trial.  We do not retain jurisdiction.


/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher