In the Matter of The CONSERVATOR-SHIP OF Gertrude GESSLER, Incompetent.

Gertrude GESSLER, Appellant,

v.

Carole MILLER, Appellee.

Civ. No. 870198CA.

Court of Appeals of North Dakota.

Feb. 11, 1988.

Richard Gilman Carver (argued), Bismarck, for appellant.

Kapsner & Kapsner, Bismarck, for appellee; argued by Carol Ronning Kapsner.

ILVEDSON, Chief Judge.

Gertrude Gessler appealed from a county court order appointing the Burleigh County Public Administrator, Meredith Baarstad, as conservator of her estate. We affirm.

Gessler is 87 years old. She has no known living relatives. She had cataract surgery in 1985 and cancer surgery in February 1987. Her eyesight is impaired and she has arthritis in her hands. She needs assistance with many activities, such as shopping, cleaning, grooming, and transportation, which is provided by friends, the people with whom she lives, members of her church, and social service agencies. She needs assistance making bank deposits, securing cash, and writing checks. That assistance is provided by Pastor Ronald Craig of the Antioch Baptist Church. Pastor Craig also assists Gessler in computing her share of the rent and other living expenses.

By petition dated May 6, 1987, Carole Miller, a friend of Gessler's for a number of years, sought the appointment of Baarstad as conservator of Gessler's estate. Pursuant to § 30.1–29–07(U.P.C. § 5–407), N.D.C.C., the court appointed an attorney to represent Gessler; appointed a visitor, Marian Sorenson; and appointed a physician, Robert E. Vigesaa, to examine Gessler and to submit a report concerning her ability to manage her property and affairs. After a three-day hearing, the court appointed Baarstad as conservator of Gessler's estate. In its order, the court found:

"5. Gertrude Gessler is incapacitated as a result of her advanced age and physical and medical problems. Gertrude Gessler experiences what the Court-appointed physician, Dr. Vigesaa, describes in layman's terms as 'hardening of the arteries' which is a physical deterioration resulting in impairment of mental faculties, particularly memory.

These conditions result in an inability to manage her property.

"6. Gertrude Gessler is vulnerable in that she is easily persuaded and unable to assert herself with regard to issues involving her property.

"7. Gertrude's physical problems have created a situation in which she must necessarily rely on others and the Court finds that she has done so in ways not entirely consistent with her earlier handling of her affairs.

"8. The Court is concerned about the fact that Gertrude Gessler's plan to confer with counsel regarding her estate plan was apparently interfered with by Pastor Craig.

"9. Gertrude Gessler has substantial property and the appointment of a conservator is necessary to the preservation of this property and its proper application."

Gessler appealed, contending that the trial court erred in appointing a conservator and erred in specifically appointing Baarstad as such conservator.

Section 30.1–29–01(5–401), N.D.C.C., provides in part:

"2. Appointment of a conservator or other protective order may be made in relation to the estate and affairs of a person if the court determines that:

"a. The person is unable to manage his property and affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, advanced age, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.

"b. The person has property which will be wasted or dissipated unless proper management is provided, or that funds are needed for the support, care, and welfare of the person or those entitled to be supported by him and that protection is necessary or desirable to obtain or provide funds."

The Legislature did not provide detailed standards or a standard of proof to be applied in the initial determination of whether a conservator should be appointed. *Compare* § 25–03.1–19, N.D.C.C., (a petition for involuntary treatment must be sustained by clear and convincing evidence). The Editorial Board Comment to Uniform Probate Code § 5–407 (§ 30.1–29–07, N.D. C.C.) states:

"The section establishes a framework within which professionals, including the judge, attorney, and physician, if any, may be expected to exercise good judgment in regard to the minor or disabled person who is the subject of the proceeding. The National Conference accepts that it is desirable to rely on professionals rather than attempt to draft detailed standards or conditions for appointment."

While asserting that some courts require proof beyond a reasonable doubt and asserting that in no jurisdiction is a preponderance of the evidence sufficient, Gessler contends that "[t]he standard to be applied in these cases is that the evidence of an incompetency should be by 'clear and convincing evidence'." [1]

In its memorandum opinion, the trial court stated that "[i]t was clear during the respondent's testimony that she has had difficulty remembering recent events and is at times confused as to issues involving the management or disposition of her property." The court also stated that "the evidence clearly indicates that the respondent is subject to the influences which might be brought to bear on her by others." We believe those statements indicate that the trial court viewed the evidence as clearly and convincingly establishing the need to appoint a conservator and thus applied the clear and convincing standard of proof. Because we conclude that the trial court applied the clear and convincing standard of proof, we need not decide whether a preponderance of the evidence or clear and convincing evidence is necessary

1. We note that Gessler did not raise in the trial court an issue about the applicable standard of proof.

to support an initial determination to appoint a conservator.

Our supreme court has applied Rule 52(a), N.D.R.Civ.P., in reviewing conservatorship matters. *See Matter of Bo*, 365 N.W.2d 847, 850 (N.D.1985) ("A trial court's findings concerning competency are questions of fact which will not be overturned on appeal unless they are clearly erroneous."). *See also In Interest of Kupperion*, 331 N.W.2d 22 (N.D.1983) (a determination under Ch. 25–03.1, N.D.C.C., that a person is in need of treatment, which must be shown by clear and convincing evidence, is a question of fact subject to the clearly erroneous rule on appeal). Thus, regardless of the standard of proof applicable to the initial determination of whether or not to appoint a conservator, a trial court's determinations under § 30.1–29–01(5–401), N.D.C.C., will not be reversed on appeal unless they are clearly erroneous.

"From evidence it viewed as clear and convincing" [*In Interest of Gust*, 392 N.W. 2d 824, 825 (N.D.1986)], the trial court found a basis for appointing a conservator. Our review of the record has not left us with a definite and firm conviction that the trial court made a mistake in finding that Gessler is incapacitated as a result of her advanced age and physical and medical problems, resulting in an inability to manage her property and that she has substantial property necessitating the appointment of a conservator for the preservation of the property and its proper application. The trial court's findings are, therefore, not clearly erroneous, and the trial court did not err in appointing a conservator.

■ Gessler contends that the trial court erred in appointing Baarstad as Gessler's conservator, rather than Pastor Craig or Fran Welch, a long-time friend of Gessler's.

Section 30.1–29–10(5–410), N.D.C.C., provides in part:

"*30.1–29–10. (5–410) Who may be appointed conservatory—Priorities.*

"1. The court may appoint an individual, or a corporation with general power

to serve as trustee, as conservator of the estate of a protected person.

"2. Unless lack of qualification or other good cause dictates the contrary, the court shall appoint a conservator in accordance with the protected person's most recent nomination in a durable power of attorney.

"3. Except as provided in subsection 2, persons who are not disqualified have priority for appointment as conservator in the following order:

\* \* \* \* \* \*

"b. An individual or corporation nominated by the protected person by other means than provided for in subsection 2 if the protected person is fourteen or more years of age and, in the opinion of the court, has sufficient mental capacity to make an intelligent choice.

\* \* \* \* \* \*

"g. A person nominated by the person who is caring for or paying benefits to the protected person.

"4. ... The court, for good cause, may pass over a person having higher priority and appoint a person having lower priority or no priority."

While it is clear from the record that Gessler reposed a great deal of confidence in Pastor Craig, and that Fran Welch, who resigned as clerk of the church during the trial, would be acceptable to Gessler as her conservator, we find no error in the trial court's appointment of Baarstad as Gessler's conservator. Section 30.1–29–10(5–410), N.D.C.C., provides that "[t]he court, for good cause, may pass over a person having higher priority and appoint a person having lower priority or no priority." In our view, the trial court had good cause to pass over Craig and Welch and appoint Baarstad.

In addition to the trial court's findings already quoted above, the trial court's memorandum opinion stated in part:

"The record of this proceeding does not establish a consistent pattern of undue influence. It is possible that decisions regarding such things as financial contributions to the Antioch Church rep-

resent the unfettered will of the respondent. At the same time, the evidence clearly indicates that the respondent is subject to the influences which might be brought to bear on her by others.[2] This Court is particularly concerned about the fact that respondent's plan to confer with counsel regarding her estate plan was apparently interfered with by Pastor Craig. His conduct as it relates to the affairs of the respondent has clearly created an appearance of improper influence even though the respondent denies that such is the case.[3]

"I have considered the testimony on both sides of this case in some detail in coming to the conclusion that it would be improper for this Court to authorize Pastor Craig or other members of the Antioch Baptist group to serve as the respondent's conservator. While the beneficiary of the respondent's charitable giving may well continue to be Antioch Baptist Church or its members, it is certainly appropriate that a neutral and detached person be appointed to act as the conservator in order to alleviate the possibility of undue influence on the respondent."

Those statements, and the evidence supporting them, amply explain and support the trial court's determination to appoint Baarstad as Gessler's conservator, rather than either Pastor Craig or Fran Welch. In addition to alleviating "the possibility of undue influence on the respondent," the trial court's appointment of "a neutral and detached person" as Gessler's conservator will also alleviate the possibility of an appearance of undue influence, to the benefit of all concerned. We find no error in this regard.

While counsel for Gessler expressed some concern about the conservator not being required to follow Gessler's wishes with regard to gifts, we note that Gessler's

donative and testamentary capacity have not been affected by the appointment of a conservator. *See* § 30.1–29–08(5–408), N.D.C.C. "Although appointment of a guardian or conservator may be some evidence of lack of testamentary capacity, the courts recognize that the issues are different." R. Effland, *Caring For The Elderly Under The Uniform Probate Code*, 17 Ariz.L.Rev. 373, 400 (1975). "In addition, gifts by will are not effective until death, and can not jeopardize the elderly person's welfare by decreasing the assets available for future support, as is the case with inter vivos gifts." *Id.*, at 400. "Even with a conservator, the elderly person ought to be free to make gifts if he understands the consequences of his acts and has sufficient assets to meet current and projected needs." *Id.*, at 401. Section 30.1–29–25(5–425), N.D.C.C., authorizes a conservator to make gifts of up to 20 percent of the yearly income from the estate. After notice and hearing, the court may make gifts exceeding 20 percent of a year's income of the estate. Section 30.1–29–08(5–408), N.D.C.C.

For the reasons stated, the order appointing Baarstad as conservator of the estate of Gertrude Gessler is affirmed.

A.C. BAKKEN, Surrogate Judge, and JAMES H. O'KEEFE, District Judge, concur.

**2.** At the suggestion of Pastor Craig in December 1986 Gessler handed to him a check in the amount of $5700 payable to the Antioch Baptist Church. This was cashed by Pastor Craig. They stated that it was for the medical needs of a member of the church. This gift was an unusually large donation for her.

**3.** A will executed by Gessler on August 2, 1985, was prepared for her by Pastor Craig and typed by Craig's wife. The will (1) appointed Ronald Craig as the executor of the estate; (2) devised several items of personal property to a friend of Gessler's and to a museum; (3) devised $10,000 to Carole Miller; and (4) devised the residue of Gessler's estate to the Antioch Baptist Church.