**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED OCTOBER 23, 2001**

ANNIE CLARK and WALTER CLARK,

    Plaintiffs-Appellants,

v                                       No. 117511

KMART CORPORATION,

    Defendant-Appellee.

_____

PER CURIAM

    Plaintiff Annie Clark[1] was injured in a slip and fall accident at defendant's store. She brought this negligence action, and a jury trial resulted in a verdict in her favor. However, the Court of Appeals reversed, concluding that there was insufficient evidence that the hazardous condition which caused the fall had been in place long enough to put the defendant on constructive notice of the condition. We

---

[1] Plaintiff Walter Clark's claims are derivative, and Annie Clark will be referred to as the "plaintiff."

conclude that the plaintiff presented sufficient evidence to create a jury-submissible question on the issue. We reverse and remand the case to the Court of Appeals for consideration of the other issues raised by the defendant in its appeal to that Court.

I

The trial testimony established that plaintiff and her husband visited defendant's Super Kmart store in Dearborn at approximately 3:30 a.m. on October 8, 1994. As they walked through a closed check-out lane into the store, Ms. Clark was injured when she slipped on several loose grapes that were scattered on the floor. Walter Clark testified that he saw footprints made by "some big, thick, rubber-soled shoes"[2] leading away from the grapes, which were smashed on the floor.

The case was submitted to the jury on a negligence theory, and it returned a verdict for the plaintiff, awarding a total of $50,000 in damages to her and her husband.

After denial of its motion for judgment notwithstanding the verdict or a new trial, the defendant appealed, and the Court of Appeals reversed in a two-to-one opinion.[3] The majority's analysis focused on *Ritter v Meijer, Inc*, 128 Mich App 783; 341 NW2d 220 (1983), a case on which plaintiff had

---

[2] This testimony was offered to establish that the footprints had been made by someone other than plaintiff because the prints were from the soles of shoes unlike those plaintiff was wearing at the time she fell.

[3] 242 Mich App 137; 617 NW2d 729 (2000).

2

heavily relied. In *Ritter,* the plaintiff said she was injured when she slipped and fell on a grape in the defendant's store, and that the grape felt as though someone had previously stepped on it. The *Ritter* panel concluded that the plaintiff's testimony was sufficient to avoid a directed verdict. The Court reasoned that because the grape would occupy only a small portion of the floor, the jury could infer that some time would have to pass before someone would step on it. This made, in the judgment of the *Ritter* panel, the "stomped-upon" grape sufficient to prove constructive notice of a slippery condition. 128 Mich App 787.

The Court of Appeals panel in this case declined to follow *Ritter*. It found too logically attenuated *Ritter*'s conclusion that the defendant had constructive knowledge of the grape on the basis of it previously having been stepped upon, and concluded that this was insufficient to remove the plaintiff's case from the realm of conjecture. Thus, the majority concluded that the trial court should have granted a directed verdict because the evidence was insufficient to support an inference of constructive notice of the presence of the grapes.[4]

II

In reviewing a trial court's decision on a motion for a directed verdict, an appellate court is to examine the

[4] Judge Kelly dissented, believing the analysis of *Ritter* to be sound and applicable to the case.

evidence and all reasonable inferences that may be drawn from it in the light most favorable to the nonmoving party. *Hord v Environmental Research Inst of Mich (After Remand)*, 463 Mich 399, 410; 617 NW2d 543 (2000). Only if the evidence so viewed fails to establish a claim as a matter of law should the motion be granted. *Orzel v Scott Drug Co*, 449 Mich 550, 558; 537 NW2d 208 (1995).

III

The duties of a storekeeper to customers regarding dangerous conditions are well established and were set forth in *Serinto v Borman Food Stores*, 380 Mich 637, 640-641; 158 NW2d 485 (1968):

> "It is the duty of a storekeeper to provide reasonably safe aisles for customers and he is liable for injury resulting from an unsafe condition either caused by the active negligence of himself and his employees or, if otherwise caused, where known to the storekeeper or is of such a character or *has existed a sufficient length of time that he should have had knowledge of it*." [Quoting *Carpenter v Herpolsheimer's Co*, 278 Mich 697; 271 NW 575 (1937) (syllabus) (emphasis added by the *Serinto* Court).]

See also *Hulett v Great Atlantic & Pacific Tea Co*, 299 Mich 59, 68; 299 NW 807 (1941). This case squarely presents the question whether the evidence would permit a jury to find that the dangerous condition was present long enough that the defendant should have known of it.

Both the majority and dissent in the Court of Appeals have focused on *Ritter, supra*, with its ostensible similarity

4

in that both slip and fall incidents involved grapes that may have been previously stepped upon. However, this case, unlike *Ritter*, presents evidence independent of the condition of the grapes, indicating that the grapes had been on the floor for a substantial period of time, making it unnecessary to determine whether *Ritter* was correctly decided.

In this case, there was no direct evidence of when or how the grapes came to be on the floor of the check-out lane. There was testimony from Kmart witnesses about the responsibilities of employees for observing and either reporting or remedying dangerous conditions. However, there was no evidence that any employee was actually aware of the grapes in the check-out lane.[5]

However, a Kmart employee testified that the check-out lane would have been closed[6] no later than 2:30 a.m., about an hour before plaintiff arrived. Given that evidence, a jury could reasonably infer that the loose grapes were, more likely than not, dropped when a customer brought grapes to the check-out lane to buy them while it was still open.[7] From this, the

---

[5] Janitorial services at the store were provided by an independent contractor. No witnesses from that firm were called to testify about its employees' activities on the morning in question.

[6] That is, closed in the sense that the register was not open for servicing customers. The check-out lane was not blocked in such a way as to prevent people from walking through it.

[7] The store had a grocery department with a produce area, and presumably sold grapes.

jury could infer that an employee of defendant should have noticed the grapes at some point before or during the closing of the lane and either cleaned them up, or asked another employee to do so.  Further, the fact that the check-out lane had been closed for about an hour before plaintiff fell establishes a sufficient length of time that the jury could infer that defendant should have discovered and rectified the condition.[8]

The availability of the inference that the grapes had been on the floor for at least an hour distinguishes this case from those in which defendants have been held entitled to directed verdicts because of the lack of evidence about when the dangerous condition arose.  See, e.g., *Goldsmith v Cody*, 351 Mich 380, 387-389; 88 NW2d 268 (1958); *Filipowicz v S S Kresge Co*, 281 Mich 90, 94-95; 274 NW 721 (1937); *Whitmore v Sears, Roebuck & Co*, 89 Mich App 3, 9-10; 279 NW2d 318 (1979); *Suci v Mirsky*, 61 Mich App 398, 402-403; 232 NW2d 415 (1975); *Galloway v Sears, Roebuck & Co*, 27 Mich App 348, 349-351; 183 NW2d 354 (1970).

We conclude that the evidence was sufficient for the jury to find that the dangerous condition that led to the injury existed for a sufficient period of time for defendant to have

---

[8] There was no testimony concerning the last time the floor of the check-out lane had been cleaned.  However, testimony described the floor as generally "dirty," which could reasonably be viewed as negating a suggestion that it had been cleaned after the lane was closed and that the grapes were dropped thereafter.

known of its existence.  Therefore, we reverse the judgment of the Court of Appeals.  In light of its analysis, the Court of Appeals did not fully consider the issues raised by the defendant with regard to the trial court's jury instructions. We remand this case to the Court of Appeals for consideration of those issues in a manner consistent with this opinion.

CORRIGAN, C.J., and CAVANAGH, WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.