File Name: 06a0810n.06
Filed: November 3, 2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 05-2509

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

ROSEMARIE GUTHRE and SCOTT GUTHRE,

    Plaintiffs-Appellants,

v.

LOWE'S HOME CENTERS, INC.,

    Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

_____/

Before:      MARTIN and COOK, Circuit Judges; BERTELSMAN, District Judge.[*]

      BOYCE F. MARTIN, JR., Circuit Judge. Rosemarie Guthre was injured while shopping at

a store owned by Lowe's Home Centers, Inc. Guthre brought a tort action in state court against

Lowe's, and Lowe's subsequently removed the case to federal court on the basis of diversity

jurisdiction. The case was dismissed by the federal district court on summary judgment. Guthre

now appeals the district court's grant of summary judgment in favor of Lowe's. For the reasons

discussed below, we **AFFIRM** the judgment of the district court.

I

      On July 25, 2002, Rosemarie Guthre went shopping at a Lowe's store in Ypsilanti, Michigan.

---

[*]The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern
District of Kentucky, sitting by designation.

As she testified, she found the item she was looking for, and carried it to the checkout counter. While at the checkout counter, she suddenly slipped, braced herself on the counter with her hand, and felt a sharp pain in her lower back. Guthre later noticed that there was loose sand on the floor. She had not looked at the ground or noticed the sand before she slipped. The cashier, Connie Geno, was the only witness to the incident.[1]

Guthre complained about the loose sand to Tim Glick, a Lowe's manager on duty at the time. She told Glick that she would not leave the premises until the sand was cleaned up. Soon thereafter, Guthre observed a Lowe's employee carrying away two dustpans of sand from the area where she had slipped. Glick filled out an incident report later that day, in which he indicated that Guthre slipped on some sand that probably had leaked from a previous customer's purchase. At a subsequent deposition, Glick stated that Lowe's sells sand in bags of fifty pounds or more and that sometimes these bags can develop holes and leak sand onto the floor. According to Glick, company policy mandates that if a spill occurs and a Lowe's employee sees it, the employee must sweep it up immediately. Glick also stated that a sand trail extended from the checkout counter, where Guthre slipped, to the lumber aisle, where Lowe's kept its sandbags. Guthre and Glick characterized the sand spill in different ways. Guthre claimed that the sand matched the color of the floor, which is why she had not noticed it, whereas Glick claimed that the sand was clearly visible.

---

[1]Ms. Geno is no longer employed by Lowe's. Guthre allegedly served her with a subpoena to attend a deposition, but she did not appear, and Guthre has since been unable to locate her.

Guthre and her husband[2] sued Lowe's in Michigan state court for maintaining a dangerous condition in its store that caused Guthre to slip and injure her back. Lowe's removed the case to federal court, where jurisdiction was deemed to be proper under 28 U.S.C. § 1332. At the close of discovery, Lowe's moved for summary judgment on the issue of liability because the sand spill was an "open and obvious" condition and, in the alternative, because Lowe's did not have actual or constructive notice of the spill. The district court granted summary judgment in favor of Lowe's, focusing on the actual/constructive notice argument. Specifically, the district court found that Guthre had produced no evidence that: (1) a Lowe's employee caused the sand spill; (2) a Lowe's employee was aware of the sand spill prior to her accident; or (3) the condition had "existed for any significant length of time such that Lowe's should be held to have been on constructive notice of the spill." D. Ct. Op., Sept. 26, 2005, at 9.

II

This Court reviews a district court's grant of summary judgment *de novo*, and must view "the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non-moving party." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996)). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (quoting Fed. R. Civ. P. 56).

---

[2]Mr. Guthre filed a claim for loss of consortium, which derives from Ms. Guthre's negligence claim.

Both parties agree that Michigan law is controlling in this diversity case. Both parties also agree that as a business proprietor, Lowe's owed a duty of care to Guthre, a business invitee, to protect her against dangerous conditions. *See Clark v. Kmart Corp.*, 634 N.W.2d 347, 348-49 (Mich. 2001). The question, then, is whether the facts and any reasonable inferences drawn from those facts, when viewed in the light most favorable to Guthre, support the district court's ruling that Lowe's did not breach its duty and thus is entitled to judgment as a matter of law.

III

The Michigan Supreme Court has long followed the same test regarding duties owed by storekeepers to their customers:

> It is the duty of a storekeeper to provide reasonably safe aisles for the customers. The proprietor is liable for injury resulting from an unsafe condition caused by the active negligence of himself and his employees, and he is liable when the unsafe condition otherwise caused is known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have had knowledge of it.

*Carpenter v. Herpolsheimer's Co.*, 271 N.W. 575, 575 (Mich. 1937); *accord Clark*, 634 N.W.2d at 348-49. Guthre concedes that in her case, there is no direct evidence of negligence. There is no evidence that a Lowe's employee affirmatively caused the loose sand to be on the floor by the checkout counter. Our inquiry is therefore reduced to one of notice — that is, did a Lowe's employee know of the loose sand (actual notice), or did a Lowe's employee have reason to know of the loose sand (constructive notice)?

Guthre's only proof that a Lowe's employee *actually* knew of the loose sand comes from a store surveillance video. The video, Guthre alleges, shows a cashier (presumably Connie Geno)

walking around the checkout counter to scan the items of a customer in line ahead of Guthre.[3]

Guthre contends that because the video shows the cashier twice walking over the area in which Guthre slipped, this is evidence that the cashier had actual notice of the dangerous condition. Lowe's contends that Guthre misreads the sequence of events in the video. Lowe's does not deny that a cashier comes around the counter in the video, but it contends that this was *after* Guthre had slipped and injured herself. We find the video evidence to be decidedly unhelpful. But even construing the facts in the light most favorable to Guthre (i.e., that the cashier came around the counter *before* Guthre slipped), as we must do in reviewing summary judgment against her, the video offers no proof that the cashier actually saw the loose sand on the other side of her counter.

Guthre next attempts to show that even if Lowe's did not have actual notice of the loose sand, its employees had *constructive* notice thereof — that is, the sand had existed for a sufficient length of time or was of such character that employees *should have known* of its existence. Guthre relies on the Michigan Supreme Court's decision in *Clark*, in which the court reversed a directed verdict in favor of the defendant storeowner. *Clark* was a case in which the plaintiff was injured when she slipped on several loose grapes that were scattered on the floor of a closed checkout lane. 634 N.W.2d at 348. In *Clark*, as here, there was no direct evidence of when or how the dangerous substance came to be on the floor of the checkout lane, nor was there any evidence that any store

---

[3]In stores like Lowe's, in which customers often purchase heavy or bulky items, it is common for a cashier to walk around the counter with a hand-held scanner rather than to stand behind the counter, reach over and pick up the items, and scan them.

employee was actually aware of the substance. *Id.* at 349. Yet the *Clark* court found certain evidence to be particularly telling on the issue of constructive notice:

> [A] Kmart employee testified that the check-out lane would have been closed no later than 2:30 a.m., about an hour before plaintiff arrived. Given that evidence, a jury could reasonably infer that the loose grapes were, more likely than not, dropped when a customer brought grapes to the check-out lane to buy them while it was still open. From this, the jury could infer that an employee of defendant should have noticed the grapes at some point before or during the closing of the lane and either cleaned them up, or asked another employee to do so. Further, the fact that the check-out lane had been closed for about an hour before plaintiff fell establishes a sufficient length of time that the jury could infer that defendant should have discovered and rectified the condition. *The availability of the inference that the grapes had been on the floor for at least an hour distinguishes this case from those in which defendants have been held entitled to directed verdicts because of the lack of evidence about when the dangerous condition arose.*

*Id*. (emphasis added). In contrast to the plaintiff in *Clark*, who presented credible evidence that the grapes on which she slipped had been on the floor for "at least an hour," Guthre presents no evidence that reasonably supports an inference that the loose sand had been on the floor of Lowe's for a significant period of time. According to Guthre, store manager Glick's testimony that a sand trail led from the counter at which Guthre slipped to the aisle in which sand bags were kept "supports the inference that the sandy substance had been spread out by various customers who came after the individual who purchased the bag of sand which was leaking." Appellant's Br. at 26. We disagree. Glick's testimony does not reasonably support the temporal inference available in *Clark*. After all, Guthre presented no evidence of any footprints or cart lines to show that the loose sand had been "spread out" by anyone other than perhaps the customer who purchased the sand or by Guthre

herself. At her deposition, Guthre further admitted that she had no way of knowing whether the loose sand had been on the floor all day or for merely five seconds.

Of course, Michigan law does not require Guthre to have personal knowledge of how long the dangerous condition existed, but she does have to present some affirmative evidence that points to the condition having existed for more than mere seconds. A plaintiff may not simply present one theory of the circumstances that led to her accident if she cannot eliminate other theories sufficiently "to take the case out of the realm of conjecture." *Rogoszewski v. State Lanes, Inc.*, No. 263876, 2006 WL 1185394, at *2 (Mich. Ct. App. May 4, 2006) (unpublished) (quoting *Whitmore v. Sears, Roebuck & Co.*, 279 N.W.2d 318, 321 (Mich. 1979)). Guthre's case is therefore on all fours with a recent unpublished Michigan Appeals Court case, in which a plaintiff slipped on a soapy substance in defendant's store. *See Hernandez v. Kmart Corp.*, No. 235818, 2004 WL 1620853 (Mich. Ct. App. July 20, 2004) (unpublished). In *Hernandez*, the Court of Appeals reversed a jury award for the plaintiff, concluding:

> It was just as likely that the spill happened seconds before plaintiff slipped as it was that the spill happened hours before plaintiff's accident. . . . [T]he jury was left to speculate as to when the spill occurred to determine whether defendant's employees had constructive notice. Such speculation is impermissible, and cannot serve as the basis of a jury award.

*Id.* at *2 (citing *Skinner v. Square D Co.*, 516 N.W.2d 475, 480-81 (Mich. 1994)). Guthre's evidence is similarly speculative. It does not give rise to the reasonable temporal inferences that were determinative in *Clark*.

IV

Accordingly, Guthre has failed to establish a prima facie case of negligence, and summary judgment in favor of Lowe's was appropriate. We therefore **AFFIRM** the judgment of the district court.