*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

NANCY HARRIS,

        Plaintiff-Appellant,

v

SINGH MANAGEMENT CO, LLC, doing business
as NORTHRIDGE APARTMENTS ROCHESTER
HILLS,

        Defendant/Cross-Plaintiff-Appellee,

and

ASPEN GROVE LANDSCAPE COMPANIES,
LLC, doing business as UNITED LAWNSCAPE,
INC,

        Defendant/Cross-Defendant-Appellee,

and

DSSC HOLDINGS, LLC, doing business as
STONESCAPE DESIGN,

        Defendant-Appellee.

UNPUBLISHED
October 26, 2023

No. 359280
Oakland Circuit Court
LC No. 2019-178786-NO

Before: HOOD, P.J., and CAMERON and GARRETT, JJ.

PER CURIAM.

Nancy Harris tripped on a piece of rebar protruding from a parking block at her apartment complex. She alleged that snowplows operated by United Lawnscape and Stonescape Design (collectively, "snowplow defendants") created the hazard and that the property owner, Singh Management ("Singh"), breached its duty by failing to repair the defect. Each defendant moved for summary disposition under MCR 2.116(C)(10), and the trial court granted their motions. The

trial court concluded that Harris failed to introduce evidence that Singh had notice of the protruding rebar, or that the hazard was caused by a snowplow or actions of defendants' employees.

Harris appeals from that decision. Because Harris presented evidence creating a genuine issue of material fact that Singh had constructive notice of the hazard, the trial court erred by granting summary disposition in Singh's favor. The trial court did not err, however, by granting summary disposition for snowplow defendants because the record evidence does not establish that they breached their duty to exercise ordinary care while engaged in snow removal services. We therefore affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Harris was a tenant at the Northridge Apartments complex in Rochester Hills. On the morning of May 15, 2019, Harris was walking her dogs. While straddling a parking block at the edge of the parking lot, Harris tripped and fell when her flip flop became caught on some exposed rebar that extended from the block. She fractured her left arm as a result of the fall. Later that day, Harris's son took photographs of where she fell, including one pictured below.



Harris sued Singh in December 2019 for claims of premises liability, negligence, and nuisance. She alleged that Singh breached its duty to warn her of the dangerous condition of which it knew or should have known, and breached its statutory duty to keep all common areas fit for their intended use. Singh filed a notice of nonparty at fault, alleging that United Lawnscape performed snow removal services on the property during the 2019 season and caused the parking block to become dislodged.[1] Harris amended her complaint, adding a negligence claim against United Lawnscape. United Lawnscape then filed its own notice of nonparty at fault, naming its

---

[1] Singh also filed a cross-claim against United Lawnscape. That cross-claim is not at issue in this appeal.

subcontractor Stonescape Design. Once more, Harris amended her complaint to add a negligence claim against Stonescape Design.[2]

Singh, United Lawnscape, and Stonescape Design each moved for summary disposition under MCR 2.116(C)(10), requesting that the trial court dismiss the claims in Harris's second amended complaint. On the premises liability claim, Singh argued that it could not be liable for Harris's injuries because it lacked notice of the exposed rebar on that particular parking block. In response, Harris argued that Singh had actual notice of the dangerous condition and failed to properly repair it. She asserted that snowplow defendants likely created the dangerous condition and that the hazard existed when Singh employees inspected the property to document damage that the snowplows created.

United Lawnscape argued in its motion for summary disposition that Harris's negligence claim against it was based on speculation and conjecture because Harris had no evidence that it dislodged the parking block at issue. United Lawnscape asserted that it subcontracted the snow removal services for the Northridge complex to Stonescape Design, and as such, did not plow any snow there during the winter of 2018-2019. Stonescape Design similarly contended in its motion that Harris presented no evidence that its plows damaged the particular parking block that led to her fall. In response, Harris argued that snowplow defendants negligently plowed the parking blocks out of place and dislodged the rebar, which created a hazard on the premises that did not previously exist.

In a brief opinion and order, the trial court held that Harris failed to present sufficient evidence that defendants had actual or constructive notice of the protruding rebar. The trial court also concluded that Harris did not introduce any concrete evidence that the protruding rebar was caused by a snowplow or by some action of defendants' employees.[3] Accordingly, the court granted all three defendants' motions for summary disposition. Harris moved for reconsideration, arguing that the trial court palpably erred by dismissing her claims against all three defendants. The trial court denied the motion. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). On de novo review, we analyze the legal issue independently, giving "respectful consideration, but no

---

[2] Michigan's court rules provide that "[a] party against whom a claim is asserted may give notice of a claim that a nonparty is wholly or partially at fault." MCR 2.112(K)(3)(a). "A party served with a notice under this subrule may file an amended pleading stating a claim or claims against the nonparty within 91 days of service of the first notice identifying that nonparty." MCR 2.112(K)(4).

[3] The trial court's opinion did not distinguish between each defendant, except to separately note that it was granting each defendants' motion for summary disposition.

deference" to the trial court's conclusion. *Wasik v Auto Club Ins Assoc*, 341 Mich App 691, 695; 992 NW2d 332 (2022).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). The moving party has the initial burden to "submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Quinto v Cross & Peters Co*, 451 Mich 358, 361-362; 547 NW2d 314 (1996) (quotation marks and citation omitted). Once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). See also *Quinto*, 451 Mich at 362. "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270-271; 826 NW2d 519 (2012) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

## III. CLAIMS AGAINST SINGH

The trial court granted summary disposition for Singh on all of Harris's claims—nuisance, negligence, and premises liability. On appeal, Harris does not discuss the nuisance claim, so we decline to address it. Harris also makes no attempt to distinguish the negligence and premises liability claims against Singh. "When it is alleged that the plaintiff's injuries arose from a dangerous condition on the land, the claim is one of premises liability rather than one of ordinary negligence." *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 625; 971 NW2d 716 (2021). Therefore, we treat Harris's claim against Singh as one of premises liability. See *id*. ("Because plaintiff's claim is based on defendant's duty as the possessor of the land on which she fell and not on defendant's ability to conform to a particular standard of care, we treat plaintiff's claim as one of premises liability.").

On the premises liability claim, Harris argues that a question of fact exists that Singh had actual or constructive notice of the protruding rebar. "All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed v F & E Oil Inc*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 162907); slip op at 8. A premises owner owes the greatest duty of care to an invitee. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000). As a tenant, it is undisputed that Harris was an invitee on Singh's property. See *Trueblood Estate v P&G Apartments, LLC*, 327 Mich App 275, 285; 933 NW2d 732 (2019). A premises owner possesses a "duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Kandil-Elsayed*, ___ Mich at ___; slip op at 43 (quotation marks and citation omitted). This duty of care is breached when the premises owner "knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to

-4-

fix the defect, guard against the defect, or warn the invitee of the defect." *Lowrey*, 500 Mich at 5 (quotation marks and citation omitted). Thus, to establish that Singh breached its duty, Harris "must demonstrate that [Singh] had actual or constructive notice of the dangerous condition at issue." *Jeffrey-Moise*, 336 Mich App at 627 (quotation marks and citation omitted).

Constructive notice requires evidence "that the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Lowrey*, 500 Mich at 11-12. That is, a question of fact exists for the jury when the defendant "should have known" about the dangerous condition "because of its character or the duration of its presence." *Id*. at 11. "Generally, the question of whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law." *Banks v Exxon Mobil Corp*, 477 Mich 983, 984 (2007). "Constructive notice may arise not only from the passage of time itself, but also from the type of condition involved, or from a combination of the two elements." *Id*. at 983, citing *Kroll v Katz*, 374 Mich 364, 372; 132 NW2d 27 (1965). The defendant's burden is not to "present evidence of a routine or reasonable inspection . . . to prove a premises owner's lack of constructive notice of a dangerous condition on its property." *Lowrey*, 500 Mich at 10. Rather, so long as the defendant shows that the plaintiff "failed to present sufficient evidence of notice," the burden shifts to the plaintiff to establish that the defendant, "as a premises owner, possessed actual or constructive notice of the dangerous notice." *Id*. In sum, once Singh met its burden, Harris had to establish that Singh knew about the exposed rebar, or should have known about it because of its character or the duration of its presence. *Id*. at 11.

In its motion for summary disposition, Singh satisfied its initial burden of showing that Harris failed to present sufficient evidence that it had notice of the protruding rebar. Referencing deposition testimony from Harris and Bradley Adler, the property's maintenance supervisor, Singh argued that its maintenance employees never received any complaints related to the parking block at issue or any parking blocks, nor had Harris ever encountered any issues with parking blocks before her fall. The burden then shifted to Harris to point to specific facts establishing that Singh knew about the protruding rebar, or should have known about it because of its character or the duration of its presence. See *id*.

First, Harris presented no evidence that Singh had actual notice that this particular parking block and rebar were dislodged. Adler testified that he did not recall receiving any complaints about rebar sticking out of the ground or out of the parking blocks after the 2018-2019 winter season. Adler inspected the property for snow removal damage at the end of March 2019 and marked damaged areas on a map, including displaced parking blocks, but the area where Harris fell was not marked. Evidence that parking blocks became displaced during the snow removal season did not establish that any of Singh's employees actually knew about the hazard at issue.[4]

---

[4] Although Harris primarily argued below that Singh had actual notice of the condition, her argument on appeal appears to focus solely on constructive notice. "[S]o long as the issue itself is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020).

As for constructive notice, Harris established that Singh knew some parking blocks had been displaced during the snow removal season. In an answer to Harris's interrogatory about Singh's awareness of the rebar, Singh stated:

> [Singh] was aware that some parking blocks had been moved off their original spots during the snow removal season. The parking blocks were to be replaced or repaired by United Lawnscape pursuant to the snow removal contract.

To provide information to United Lawnscape on necessary repairs, Adler inspected the property in March 2019 and documented damage on a map of the property that he believed had been caused by snowplows during the 2018-2019 season. The map identified several parking blocks that, according to Adler, were either "pushed out of place" or "flipped back on their sides." The parking block and exposed rebar that caused Harris's fall in May 2019 were not identified on the damage report. Adler sent the map over e-mail to Singh's regional facilities director, Chris Pavlinic, with the subject line "Snow contractor damages" and a message directed Pavlinic to "the attached map of damages caused by United." This evidence, viewed in the light most favorable to Harris, creates a material factual dispute about whether a reasonable premises possessor should have discovered the protruding rebar "because of its character or the duration of its presence." *Lowrey*, 500 Mich at 11.[5]

Beginning with the character of the condition, the hazard at issue was of a similar character to conditions that Adler had identified on his inspection of the property in March 2020. As for the duration of its presence, Harris introduced evidence that other parking blocks on the Northridge property had been moved sometime during the 2018-2019 winter season, and that Adler believed that snowplows had pushed these parking blocks out of place. Viewed in the light most favorable to Harris, a jury could reasonably infer from this evidence that a snowplow also damaged and dislodged the rebar on the parking block on which she eventually tripped and fell. A jury could also infer that Adler failed to notice the protruding rebar during his March 2019 inspection, and that the rebar went undetected for nearly two more months before her fall. Indeed, the longer a defect is present, the *stronger* the evidence of constructive notice. See *Clark v Kmart Corp,* 465 Mich 416, 420; 634 NW2d 347 (2001). A reasonable factfinder could thus conclude that the hazard existed for a "sufficient length of time" such that Singh should have discovered it. See *Banks*, 477 Mich at 984.[6]

---

[5] On appeal, Harris also highlights deposition testimony from Perrean Dexter, the Northridge property site manager, and Michelle Pompetzki, a regional property manager for Singh, as creating a question of fact on constructive notice. Because Harris did not present this evidence in response to Singh's motion for summary disposition, we do not consider it in our analysis of constructive notice. See *Karaus v Bank of New York Mellon*, 300 Mich App 9, 15 n 2; 831 NW2d 897 (2012) ("[T]his Court's review of a trial court's decision on a motion for summary disposition is limited to the evidence that was presented to the trial court at the time the motion was decided.").

[6] Harris also presented evidence of an invoice that purportedly showed that repairs to the parking blocks were not made until May 22, 2019, three days *after* her fall. This invoice does not create a genuine issue of material fact because, even viewed in the light most favorable to Harris, the

Singh argues that even if a question of fact exists on constructive notice, it is still entitled to summary disposition because the protruding rebar was an open and obvious condition. The trial court did not rule on this issue, but Singh raised it below. At the time Singh argued that the rebar was open and obvious, Michigan law provided that a "premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 517; 629 NW2d 384 (2001). But our Supreme Court recently overruled *Lugo*, rejecting its placement of the open-and-obvious danger doctrine as part of a landowner's duty and scrapping the special-aspects doctrine. *Kandil-Elsayed*, ___ Mich at ___; slip op at 2.[7] *Kandil-Elsayed* instead held that "the open and obvious nature of a condition is relevant to breach and the parties' comparative fault" and "when a land possessor should anticipate the harm that results from an open and obvious condition, despite its obviousness, the possessor is not relieved of the duty of reasonable care." *Id*. Because the state of the law on open and obvious dangers has so recently changed, and the parties have not briefed the issue under the standards announced in *Kandil-Elsayed*, we decline to rule on this issue in the first instance and leave it to the parties to address on remand.[8]

## IV. CLAIMS AGAINST UNITED LAWNSCAPE AND STONESCAPE DESIGN

Harris also argues that the trial court erred by ruling that she failed to present evidence establishing a question of fact whether the hazard was caused by a snowplow.

Harris brought claims of ordinary negligence against snowplow defendants. "To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered

---

invoice contains no indication that it related to work conducted at the Northridge Apartments complex. In fact, the invoice contains a written notation for "Stonegate," which Curtis Taylor, the contractor paid on the invoice, testified was a different residential community where he conducted repair work.

[7] *Kandil-Elsayed* was decided as a companion case with *Pinsky v Kroger Co of Mich*, ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 163430).

[8] In her reply brief, Harris also brings up Singh's statutory duty to keep the premises fit for their intended use under MCL 554.139(1)(a). An issue raised in a reply brief is not properly presented for review because reply briefs must be limited to rebuttal of the arguments in the appellee's brief. *Bronson Methodist Hosp v Mich Assigned Claims Facility,* 298 Mich App 192, 199; 826 NW2d 197 (2012); MCR 7.212(G). Even if we considered the statutory duty claim, we would conclude that it lacked merit. For a parking lot, a premises owner's obligation under MCL 554.139(1)(a) is to ensure that vehicles can access parking spaces and that tenants have reasonable access to their parked vehicles. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 429; 751 NW2d 8 (2008). Because the protruding rebar did not limit vehicle access to parking spots or tenants' reasonable access to their vehicles, Singh did not breach its statutory duty. See *id*. at 430 (holding that tenants were able to use parking lot for its intended purpose despite the accumulation of one to two inches of snow).

damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke*, 489 Mich at 162. To determine whether a legal duty arises "when two parties enter into a contract and a noncontracting third party, i.e., one who is a stranger to the contract, is injured," the operative question is "whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations." *Id*. at 162, 166 (quotation marks and citation omitted). For instance, a contracting defendant retains a separate and distinct "common-law duty to use ordinary care in order to avoid physical harm to foreseeable persons and property in the execution of its undertakings." *Id*. at 172.

Harris's negligence claims against snowplow defendants alleged that they owed her a duty "to perform the snow removal services in a manner that did not create a hazardous condition" and "to provide snow removal services in a manner that did not create a new hazard on the property, that would include damaging the parking blocks causing the rebar to protrude." Harris was not a party to the contract between Singh and United Lawnscape, and the subcontract between snowplow defendants. Still, while snowplow defendants did not owe any contractual duty to Harris, they owed her a separate and distinct "common-law duty to use ordinary care in order to avoid physical harm to foreseeable persons and property in the execution of [snow removal services]." *Loweke*, 489 Mich at 172. Further, Harris's argument that their snowplows caused the damage to the parking blocks that resulted in her fall is, in essence, an argument that they breached this common-law duty. Assuming that Harris presented sufficient circumstantial evidence that snowplow defendants created the protruding rebar hazard by dislodging a parking block with one of their snowplows,[9] Harris has not explained how either company breached the duty of ordinary care that it owed her. And "where the evidence presented to a court concerning breach generates no questions of fact, the issue can be decided by the judge as a matter of law." *Kandil-Elsayed*, ___ Mich at ___; slip op at 10 n 2, citing MCR 2.116(C)(10).

The record evidence supports that dislodged or damaged parking blocks occurred in the ordinary course of snow plowing across the winter season. For instance, Dexter testified that in her 13 years of experience at Northridge, snow removal contractors damaged parking blocks "quite a bit." She also agreed that every winter season since 2009 or so, she had seen rebar and parking blocks displaced. Similarly, Pompetzki agreed that parking blocks were dislodged during removal season, rebar became deformed or displaced as a result of snow removal services, and repair requests to fix parking blocks were common.[10] Thus, it made sense that Adler conducted an end-of-season inspection of the Northridge property to identify any damage on the property that he believed was caused by snowplows or the snow removal contractors more generally. But besides establishing that a snowplow may have caused the protruding rebar to form, Harris presented no

---

[9] We note that it is unclear from Harris's argument how or why snowplow defendants could *both* be liable on a negligence theory. Harris presented no evidence suggesting that plows from both companies could be responsible for creating the tripping hazard. Accepting Harris's position, it was either United Lawnscape's plows *or* Stonescape Design's plows that damaged the parking block at issue. In any event, we need not resolve that conundrum because Harris failed to establish a genuine issue of material fact that either company breached the duty it owed her.

[10] Harris referenced testimony from Dexter and Pompetzki in her response to United Lawnscape's motion for summary disposition.

-8-

evidence of the specific nature of snowplow defendants' conduct that created the hazard. For instance, there was no evidence that a snowplow was being driven unreasonably fast or without reasonable caution when the parking block at issue was dislodged. Nor was there any evidence about the visibility of the parking block when it was moved—i.e., was it covered by snow? Harris also presented no expert or documentary evidence suggesting that the occasional dislodging of parking blocks was indicative of negligently-performed removal services. Without other evidence, we are unpersuaded that the mere result of a dislodged parking block—and thus the protruding piece of rebar—establishes that snowplow defendants negligently plowed the parking lot when the incident occurred. Viewed in the light most favorable to Harris, the record evidence does not generate any question of fact whether snowplow defendants breached their duty to exercise ordinary care by dislodging the single parking block involved in Harris's fall sometime during the 2018-2019 winter season. Although the trial court held that Harris presented no evidence that snowplows caused the hazard at issue, "we will not reverse a trial court's decision when it reaches the right result, even if it was for the wrong reason." *Bailey v Antrim Co*, 341 Mich App 411, 420; 990 NW2d 372 (2022). We therefore conclude that the trial court did not err by granting summary disposition in favor of snowplow defendants.[11]

We affirm in part, reverse in part, and remand for further proceedings that are consistent with this opinion.

/s/ Noah P. Hood
/s/ Kristina Robinson Garrett

---

[11] Harris also argues that the trial court erred by denying her motion for reconsideration. Because we have resolved the claim against Singh in Harris's favor, it is unnecessary to address this issue as to that defendant. And because the trial court did not err by granting snowplow defendants' motions for summary disposition, the trial court necessarily did not err by denying Harris's motion for reconsideration of those decisions.