**Donald E. SPARKS, Jr., Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

**No. CIV. 02–40351.**

United States District Court, E.D. Michigan, Southern Division.

March 16, 2005.

Gregory J. Rohl, Rohl & Leone, Novi, MI, Leonard A. Siudara, Troy, MI, for Donald E. Sparks, Jr., Plaintiff.

Michael A. Gunderson, Lupo & Koczkur, Paul S. Koczkur, Lupo & Koczkur, Detroit, MI, for Wal–Mart Stores, Incorporated, Defendant.

Gary L. Schmalzried, Blue Cross and Blue Shield of Michigan, Detroit, for Blue Cross and Blue Shield, Intervenor.

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

This is a premises liability action brought by Plaintiff Donald E. Sparks against Defendant Wal–Mart Stores, Inc. Plaintiff alleges that Defendant negligently failed to maintain or inspect the premises of its Gaylord, Michigan store to ensure that the premises was safe for business invitees. Plaintiff further alleges that this failure caused a ceiling mounted display to fall from the ceiling and injure him. Before the Court is Defendant's motion for summary judgment, filed on August 6, 2004. The Court held a hearing on Defendant's motion on February 10, 2005. For the following reasons, the Court will DENY the motion.

### I. Background

The following facts are undisputed: On August 14, 2000, Plaintiff and his family went shopping at the Wal–Mart store in Gaylord, Michigan. Plaintiff was staying at his vacation home in Lewiston, Michigan and wanted to purchase fishing gear for his vacation, including fishing rods. Upon entering Wal–Mart, Plaintiff, his son, and his son's friend went directly to the sporting goods department to purchase the fishing gear.

In the sporting goods department, suspended above the aisle and in between the shelves, was a display used to hang fishing rods. The display was essentially a piece of standard two-by-two lumber approximately twelve feet long, suspended approximately twelve inches below the drop ceiling. Small J-shaped hooks were screwed into the beam every few inches. Wal–Mart employees would then hang fishing rods from the hooks using small plastic loops strung through the last eyelet on the end of each fishing rod. Two or more of these displays were hung end to end in a straight line. Each display held approximately fifteen to twenty fishing rods. The hanging displays had been in use at the Gaylord Wal–Mart and others for some time without incident.

While Plaintiff was shopping, Wal–Mart employee William Caruss was restocking the hanging displays. Mr. Caruss used the first few steps of a ladder to restock the display. After restocking the display with the fishing rods he had brought with him, Mr. Caruss picked up his ladder, walked down the aisle, and turned the corner.

A few minutes after Mr. Caruss had left, there was a crash. One end of one of the displays had come lose from its mooring and fell from the ceiling. Mr. Caruss returned to the scene to find Plaintiff kneeling on the bottom of a display shelf and leaning against the back of it. Plaintiff's son was in the same aisle when the incident happened but was unharmed; his son's friend was in a different aisle.

Plaintiff finished his purchases and proceeded to checkout. The receipt shows that he purchased three fishing rods along with a number of lures and miscellaneous items.[1] After checkout, Plaintiff was asked about the accident by an assistant manager, Kathy Hughes, who was filling out an incident report. Plaintiff then went to the emergency room at a nearby hospital. The hospital examined Plaintiff, but did not treat him, and released him with instructions to follow-up with his primary care physician, which he did after his vacation, approximately eleven days later. Since the incident, Plaintiff has experienced complications and received multiple surgeries to his knees, shoulders and elbows.

The day after the incident, the display in question was taken down. The remaining hanging displays were removed a few days after that. To date, neither party has an explanation as to why the display fell.

After the accident and shortly after Plaintiff filed this lawsuit, Wal–Mart, for reasons unrelated to the lawsuit, shut down the Gaylord store and moved to a larger facility. In so doing they gutted the Gaylord store, leaving it completely changed. Tr. at 12.

Those are the undisputed facts. Several key facts, however, are in dispute: First, it is disputed whether the display was suspended from the drop ceiling by means of clips which attached to the drop ceiling frame, or whether it was attached to the building trusses, or joists, above the drop ceiling. Although Plaintiff does not recall how it was suspended, Plaintiff relies on the deposition testimony of Mark Bayliss, the store manager at the time, who testi-

---

1. Plaintiff contends that he was primarily shopping for children's fishing rods, which are shorter than those used by adults. See Resp. at 2–3; Aff. of Donald Sparks (Oct. 26, 2004); Plaintiff's receipt for the days purchases appears to corroborate his contention. Of the three fishing rods purchased, two were significantly cheaper than the third. Nevertheless, if price denominates children's equipment, than Plaintiff was also shopping for an adult fishing rod, for one of the fishing rods was significantly more expensive than the other two. Pl.Ex. 1 ("Offer of Proof").

fied that the display was hung from clips that snapped onto the frame supporting the ceiling tiles. Baybliss Depo. at 15. Wal–Mart relies on the deposition testimony of Mr. Caruss who testified that he saw the display in question when it was removed the following day and saw that it was suspended from the roof truss system. Caruss Depo. at 13.

Second, the height of the drop ceiling is in dispute. Plaintiff contends that the ceiling was twelve feet above his head, while Wal–Mart states that there is no evidence to support that fact. Plaintiff, relying on his experience as an electrical contractor, says that he knows the ceiling was twelve feet high. Tr. at 36.

Third, there is a dispute as to whether Plaintiff removed, or attempted to remove, any of the fishing rods hanging from the display. Wal–Mart relies on Plaintiff's first deposition in which he admitted that the fishing rods were within his reach and that he did take down one or more of the fishing rods to examine them. Sparks Depo. I at 45 & 56. Wal–Mart also relies on the Deposition of Ms. Hughes who stated that Plaintiff told her that the display came down while he was examining the fishing rods. Plaintiff relies on his second deposition in which he denies ever touching the fishing rods hanging from the display or that he could even reach them without a ladder. Sparks Depo. II at 108 & 113. Mr. Caruss, who is one inch shorter than Plaintiff, testified that he could reach the fishing rods without a ladder. Caruss Depo. at 16.

Fourth, the cause and extent of Plaintiff's injuries are also in dispute. Wal–Mart points to Mr. Caruss' deposition, in which he testified that Plaintiff stated had not been hit by the display and was not injured. Caruss Depo. at 23. Plaintiff, however, explains in his second deposition that he was hit by the display on his left shoulder, and was injured when he fell into the shelves along the side of the aisle, but that he did not make a scene because it would has excited his son's anxiety and ruined the vacation. Sparks Depo. at 123, 128 & 131.

Fifth, Plaintiff has produced three pages from a Wal–Mart store manual which detailed certain safety procedures for "Salesfloor Safety." Def. Ex. 9. The procedures would have applied to the hanging display in the Gaylord store, were the procedures in effect at the Gaylord store at the time of the accident. Yet, Defendant disputes that the procedures were in effect. Tr. 39–40.

## II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party

has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd,* 929 F.2d 701, 1991 WL 49687 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

### III. Analysis

Wal–Mart advances three arguments in support of its motion for summary judgment: 1) that Wal–Mart did not have notice of any dangerous condition on its premises at the time of Plaintiff's incident; 2) that any risk of harm presented by the hanging display of fishing rods was open and obvious; and 3) there is no evidence of a defect with respect to the hanging display of fishing rods that existed at the time of the incident and, therefore, Plaintiff's claims are based on speculation and conjecture. All three of Wal–Mart's arguments must fail.

### A. Notice

■ Michigan law requires that a prima facie case of premises liability include sufficient evidence that the landowner either created the dangerous condition or had actual or constructive notice of the condition. *Berryman v. K Mart,* 193 Mich.App. 88, 92–93, 483 N.W.2d 642 (1992). Wal–Mart argues that summary judgment should be granted because there is no evidence that Wal–Mart had any notice of the dangerous condition associated with the display. Furthermore, Wal–Mart has produced affidavits and a deposition of Wal–Mart employees who would have been responsible for installing the display, had

Wal–Mart been the one to installed it. These witnesses attest that they did not install the display or have any knowledge of who did. *See* Def. Exs. F and G.

Plaintiff, however, produced a portion of a Wal–Mart store manual with procedures for "Salesfloor Safety" which require that "[o]nly approved overhead displays, such as kites, scarfs, etc. should be hung from a false ceiling. Any such displays are to be hung with monofilament line only." Further, "[a]ny other approved overhead displays should be hung from the ceiling joists, using braided nylon rope." Because the effective date of the manual is August 1989, the question of whether the manual's safety procedures were in effect at the time of the accident is in dispute. Def. Ex. 9.

■ Viewing the facts and all reasonable inferences in a light most favorable to the non-moving party requires the Court, for the purpose of this motion only, to find that the display was suspended from the drop ceiling frame in accordance with Plaintiff's contention. Baybliss Depo. at 15. For the same reason, the Court must find that the safety procedures in the 1989 Wal–Mart store manual were in effect at the time of the accident. The reasonable inference is that the drop ceiling was not sturdy enough to support anything other than "kites, scarfs, etc." Def. Ex. 9. If such were the case, then Wal–Mart's store manual provided adequate notice that the display should not have been suspended from the drop ceiling and to do otherwise would make the display defective and create a dangerous condition.

### B. Open and Obvious

■ Next, Wal–Mart argues that the summary judgment should be granted because any risk of harm presented by the hanging display was open and obvious and not unreasonably dangerous. According to the Michigan Supreme Court, a premis-

es owner has no duty to warn of dangers that are either known to the invitee or open and obvious. *Riddle v. McLouth Steel Corp.*, 440 Mich. 85, 485 N.W.2d 676 (1992). In *Lugo v. Ameritech Corporation*, 464 Mich. 512, 629 N.W.2d 384 (2001), however, the Michigan Supreme Court held that a premises owner still has a duty to warn of open and obvious dangers if those dangers present either 1) an unreasonable risk of harm, such as where the danger is effectively unavoidable as with standing water blocking the only exit from a building; or 2) an unreasonably high risk of harm, such as an unguarded thirty-foot deep pit in the middle of a parking lot. *Id.* at 518, 629 N.W.2d 384.

Consequently, Wal–Mart argues that "any risk of harm presented by pulling down on the fishing rods and hanging display should have been open and obvious to Plaintiff," and that any such risk was neither unavoidable, nor unreasonably dangerous. Mot. at 13 & 16. Such an argument relies on the premise that Plaintiff pulled down on the fishing rods hanging from the display with enough force to bring down the display.

Although the Court must view the facts in a light most favorable to Plaintiff, the Court is not required to accept the statement of Plaintiff that he could not, and did not, touch the fishing rods in any way. Sparks Depo. II at 113. As the Supreme Court noticed in *Cleveland v. Policy Management Systems Corporation*, 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), courts may require an adequate explanation when faced with an inconsistency such as the one here, in which Plaintiff admits in one deposition that he could reach the fishing rods on the hanging display and even removed one, only to deny the exact same propositions in a subsequent deposition:

They have held with virtual unanimity that a party cannot create a genuine

issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.

*Id.* at 806. At the hearing, Plaintiff was given the opportunity to explain the discrepancy between his two depositions. Plaintiff's counsel attempted to resolve the inconsistency by explaining that Plaintiff never admitted to remove any fishing rods from the hanging display, instead Plaintiff was referring to removing fishing rods from the shelves along the sides of the aisle. Tr. at 33–24. Plaintiff's counsel called the contrary interpretation, that Plaintiff did in fact remove fishing rods from the hanging display, "defendant's spin" and told the Court that his "opposition is trying to mislead you." Tr. at 29, 30.

██ The Court, however, did not accept Plaintiff's counsel's explanation, and referred Plaintiff's counsel to the disputed portions of the deposition, reading:

THE COURT: All right. Page 55, "question, when fishing rods were attached by their tips to the J hooks and they hung down, were they tall enough or were they short enough then when you walked down the center of the aisle that you had to duck or you would be bumping your head into them"? Answer, not at all.

Question, they were above your head? Answer, very much. Question, how tall are you? Answer, I'm five eight. Question, how far above your head were they? For instance Mr. Siudara and I are over six feet. Were they considerably above our heads? Answer, I don't remember.

Question, were you able to reach them with your stature? Answer, I don't remember, but I think yes. Question, so if you had chosen to examine any one of them you could have reached up and removed it from the hook and—answer, yes. Question, take a look at it? Answer, I believe so.

Question, "or even taken it to the cash register if you decided to purchase it? And his answer to that one is, I believe so, yes".

Tr. at 32–33.

MR. KOCZKUR: It's very clear. You don't need any explanation because it's not stuff that's sitting on the floor, we're obviously talking about the stuff that's hanging from the rack. It's says right there. And the reason he says it's the limited stock was because if you read the transcript Mr. Sparks says, that that was only 25% full. That's why it's limited stock on the hanging rack.

Bottom of page 55—

THE COURT: The question at the bottom of 55, "question, and with regard to the 25% of the reels, rods and reels that were hanging from the rack before you asked for—received further stock, I take it that you tested some of those and they didn't feel right or they weren't what you wanted"? Answer, I don't remember that. I don't really remember.

"Question, well, I guess what I'm asking you is, did you take any of them down to examine them to see if that's what you wanted, the limited stock they did have? Answer, on the limited stock, yes".

Tr. at 34–35. Faced with the clear testimony of Plaintiff in his first deposition that he could, and did, remove one or more fishing rods from the display, the Court finds Plaintiff's counsel's explanation insufficient to explain Plaintiff's contradiction.[2]

---

**2.** The Court notes that immediately after Plaintiff made this admission, Plaintiff's coun-

Therefore, for the purposes of this motion, the Court will not accept Plaintiff's claim that he did not, and could not, touch the fishing rods on the hanging display.

Still the Court must view the facts in the light most favorable to Plaintiff. In his first Deposition, Plaintiff admits to "taking down" fishing rods from the display, not pulling on them as Wal–Mart contends. Sparks Depo. I at 56. To properly take a fishing rods off the rack would require Plaintiff to lift the fishing rods up so as to lift the small plastic loop attached to the fishing rod's eyelet over the J-hook which secured the rod to the display. With such a premise, the Court concludes that it is not open and obvious that a display of fishing rods would fall from the ceiling after a person removes one of the fishing rods in this manner, which must certainly be a common occurrence.

## C. Evidence of Defect

Lastly, Wal–Mart argues that summary judgment should be granted because Plaintiff has failed to set forth evidence of a defect with respect to the hanging display. Specifically, Wal–Mart argues that Plaintiff has failed to establish factual causation and proximate causation and because there is no evidence of any defect in the display. Therefore, Wal–Mart maintains, Plaintiff's case rests on speculation and conjecture.

Wal–Mart relies on *Skinner v. Square D Co.*, 445 Mich. 153, 516 N.W.2d 475 (1994), a products liability case in which the Michigan Supreme Court clarified "what it means to provide a reasonable inference of causation," in order to establish causation. *Id.* at 164, 516 N.W.2d 475. The Court stated:

[A]t a minimum, a causation theory must have some basis in established fact. However, a basis in only slight evidence is not enough. Nor is it sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as another theory. Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred.

Id. at 164–65, 516 N.W.2d 475.

Again, in a motion for summary judgment, the Court cannot make credibility determinations or weigh the evidence, but must view the evidence in the light most favorable to Plaintiff. *See Bass v. Robinson*, 167 F.3d 1041 (6th Cir.1999). In this light, the Plaintiff's causation theory—that the display fell because it was suspended from the drop ceiling which could not support the weight; that the display struck Plaintiff, causing him to fall into the display shelves; and that the incident ultimately caused his injuries—is not a theory that "is, at best, just as possible as another theory." *Skinner*, 445 Mich. at 164, 516 N.W.2d 475. Unlike *Skinner*, where there were no witnesses to the product malfunction that caused the decedent's death, Plaintiff witnessed the display fall and evidence exists which corroborates his theory. *See Kenkel v. Stanley Works*, 256 Mich.App. 548, 560, 665 N.W.2d 490 (2003). When such evidence is taken in a light most favorable to Plaintiff, the case survives summary judgment.

## IV. Conclusion

Because Wal–Mart has failed to carry its burden as required by Rule 56, the Court

---

sel interrupted the deposition and changed the topic to whether Wal–Mart had in its possession a video tape of the incident. Sparks Depo. I at 56. When Wal–Mart's counsel stated that he knew of none, Plain-

tiff's counsel began to argue with Wal–Mart's counsel, and ultimately terminated the deposition under the pretext that Wal–Mart was "sandbagging" Plaintiff. *Id.* at 58.

will deny Wal–Mart's motion for summary judgment.

## V. Discovery

At the hearing, the Court expressed its opinion that discovery should be extended in this case. Tr. at 44. Yet, after a thorough review of the record, the Court notices that Magistrate Judge Wallace Capel has specifically closed discovery due to problems with compliance. *See* Discovery Order (July 1, 2004)(Docket entry 41) (sanctioning Plaintiff, ordering specific discovery, and closing all other discovery). Therefore, the Court will only open discovery for an additional sixty (60) days, and only on the issues of 1) the hanging display's design and parameters, such as whether it was suspended from the drop ceiling frame or the building trusses; 2) the safety procedures Wal–Mart had in effect at the Gaylord store at the time of the incident relating to store displays; and 3) the Gaylord store's ceiling height. Discovery is so limited so as to avoid "a fishing expedition masquerading as discovery." *Stanford v. Parker,* 266 F.3d 442, 460 (6th Cir.2001).

█ Plaintiff currently has pending two motions: "Plaintiff's Motion In Limine to Exclude the Speculative Opinion of William Caruss and Arguments of Counsel" and "Plaintiff's Motion for Summary Judgment to Strike Defendant's Affirmative Defenses of Comparative Negligence and Open and Obvious Danger," both filed on November 19, 2004. The Court views these two motions as an attempt to circumvent the Court's earlier order of October 10, 2004, that struck Plaintiff's first response to Wal–Mart's motion for summary judgment because Plaintiff filed excessive materials exceeding the allowable page limit, none of which conformed to the local rules. *See* Order to Strike (Oct. 20, 2004)(Docket entry 51). As can be deduced from the pending motions' titles, Plaintiff's two motions serve nothing more than to expound on his argument against Wal–Mart's motion for summary judgment. The Court does not condone the practice of filing extraneous motions to frustrate the page limits imposed by the rules. *See* E.D. Mich. Local R. 7.1(c).

For this reason, and for the reason that discovery will now be reopened, the Court will dismiss Plaintiff's two pending motions without prejudice. "This Court has a general policy that motions for summary judgment will not be considered until after the close of discovery." *Ramik v. Darling Int'l, Inc.,* 161 F.Supp.2d 772, 776 n. 1 (E.D.Mich.2001) (Gadola, J.) (citing *McLaren Performance Techs., Inc. v. Dana Corp.,* 126 F.Supp.2d 468, 470 (E.D.Mich.2000) (Gadola, J.); *Helwig v. Kelsey–Hayes Co.,* 907 F.Supp. 253, 255 (E.D.Mich.1995) (Gadola, J.)). As the Supreme Court has noted, summary judgment motions are appropriate "after adequate time for discovery." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [docket entry 42] is **DENIED.**

**IT IS FURTHER ORDERED** that discovery shall be reopened for an additional sixty (60) days from the date of filing of this order. Discovery shall be limited to the issues of 1) the hanging display's design and parameters, such as whether it was suspended from the drop ceiling frame or the building trusses; 2) the safety procedures Wal–Mart had in effect at the Gaylord store at the time of the incident relating to store displays; and 3) the Gaylord store's ceiling height.

**IT IS FURTHER ORDERED** that "Plaintiff's Motion In Limine to Exclude the Speculative Opinion of William Caruss and Arguments of Counsel" [docket entry

58] and "Plaintiff's Motion for Summary Judgment to Strike Defendant's Affirmative Defenses of Comparative Negligence and Open and Obvious Danger" [docket entry 61] are **DENIED WITHOUT PREJUDICE.**

**SO ORDERED.**