*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0416p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BARBARA DEBUSSCHER,

    *Plaintiff-Appellant,*

    *v.*

No. 06-2536

SAM'S EAST, INC.,

    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-72319—Gerald E. Rosen, District Judge.

Argued: September 18, 2007

Decided and Filed: October 11, 2007

Before: BATCHELDER and GILMAN, Circuit Judges; VARLAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Louis G. Corey, THE COREY LAW FIRM, Royal Oak, Michigan, for Appellant. William L. Henn, SMITH, HAUGHEY, RICE & ROEGGE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Louis G. Corey, THE COREY LAW FIRM, Royal Oak, Michigan, for Appellant. Jon D. VanderPloeg, SMITH, HAUGHEY, RICE & ROEGGE, Grand Rapids, Michigan, for Appellee.

---

## OPINION

---

    RONALD LEE GILMAN, Circuit Judge. Barbara DeBusscher was injured when a portable basketball goal fell on her while she was shopping in a Sam's Club store operated by a subsidiary of Wal-Mart Stores, Inc. The district court granted summary judgment in favor of the store after concluding that DeBusscher failed to produce sufficient evidence that the store caused the accident or had notice of an unsafe condition that resulted in her injuries. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

---

[*] The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

# I. BACKGROUND

## A.        Factual background

On August 14, 2002, DeBusscher was shopping in a Sam's Club store in Roseville, Michigan, accompanied by her three children. At the time, her son Nathan was seven years old, her daughter Miranda was four, and her daughter Autumn was three. DeBusscher arrived at the store between 12:30 p.m. and 2:00 p.m., and shopped for approximately 30 minutes prior to the accident that led to the present suit.

While DeBusscher was shopping, her son walked next to the shopping cart and her two daughters sat inside the cart. Autumn asked to get out of the cart at some point. DeBusscher lifted Autumn from the cart and set her on the floor. As she was doing so, she heard Nathan say: "There's nothing in it." Within moments, a portable basketball goal that was on display in the immediate vicinity of the cart fell on DeBusscher, striking her head and pinning it between the backboard and the rim.

Shortly after the basketball goal fell on DeBusscher, Fred Heck, the store's merchandise manager, came to the scene. DeBusscher was bleeding from her head where the basketball goal had struck her. Heck asked DeBusscher what had happened. According to Heck, she told him that Nathan was playing with the basketball goal when it fell on her. DeBusscher, however, said in her deposition that Nathan later told her that he had simply touched some part of the goal before it fell.

DeBusscher was injured by a Lifestyle-brand portable basketball post and goal that sits on a large, rectangular wheeled base. Fred Heck said in his deposition that the base is designed to be filled with sand or water to stabilize the unit and prevent it from toppling over. He had not set up the model that fell on DeBusscher. That particular basketball goal had been put in place prior to Heck's arrival at the Roseville store more than two years earlier.

Although Heck testified that the base "felt like there was water in it" when he moved the goal to the side of the aisle where DeBusscher was injured, he never checked the inside of the base either prior to or after DeBusscher's accident. He also said that he never directed anyone at the store to add sand or water to the base during the two years prior to the accident. Heck did say, however, that a 55-gallon bucket of pool chemicals had been placed on the base of the goal prior to the accident to provide stability, but that the bucket had fallen over at some point prior to or when the basketball goal fell on DeBusscher. He testified that he had seen the bucket sitting on the goal's base earlier that day when he did a walk-through of the area.

Although emergency medical technicians were called to the store, DeBusscher declined to go to a hospital because she was worried about her children and wanted to be able to take them home. Instead, she stayed in the store approximately an hour after the accident before leaving on her own. Her husband drove her to the hospital the next morning because she was still experiencing pain in her head and neck. She was diagnosed with a closed-head injury and contusions to her scalp.

The record contains no evidence about the specific characteristics of the basketball goal, and no photographs are included in the record. There is no information about the manufacturer's requirements for stabilizing the base of the unit. The goal in question was taken off the display floor after the accident and has subsequently been either lost or destroyed. DeBusscher, however, does not raise any claim of evidence spoliation by the defendant. Sam's East relocated the Roseville store to a new location approximately two years after the accident, and the store where DeBusscher was injured no longer exists.

**B.      Procedural background**

DeBusscher filed the present complaint in the Circuit Court of Macomb County, Michigan in June of 2004.  She sought damages from Sam's East, Inc., a subsidiary of Wal-Mart, for medical expenses, pain and suffering, loss of income and earning capacity, and mental and emotional suffering based on a claim of premises liability.  Sam's East removed the suit to federal district court based on diversity of citizenship.  In December of 2004, Sam's East filed a motion for summary judgment on the ground that it had no notice of any alleged hazard in its store.  The district court granted the motion in a written opinion in October of 2006.  This timely appeal followed.

## II.  ANALYSIS

**A.      Standard of review**

We review de novo the district court's grant of summary judgment. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006).  Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.      Substantive law**

DeBusscher is a resident of Michigan and Sam's East  is incorporated in and has its principal place of business in Arkansas.  "In diversity cases such as this, we apply state law in accordance with the controlling decisions of the state supreme court." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001).

**C.      Premises liability**

DeBusscher characterized her claim as a premises-liability claim rather than as a general negligence claim.  Premises liability is a specific type of negligence claim based on an injury that arises out of a condition on the property as opposed to an injury arising out of the activity or conduct that created the condition. *See James v. Alberts*, 626 N.W.2d 158, 162 (Mich. 2001).  "For purposes of premises liability, Michigan courts recognize three common-law categories: trespasser, licensee, and invitee." *Kessler v. Visteon Corp.*, 448 F.3d 326, 336-37 (6th Cir. 2006) (citing *James*, 626 N.W.2d at 162).  "A landowner's duty to a visitor depends upon that visitor's status." *Id*. at 337 (citing *Stitt v. Holland Abundant Life Fellowship*, 614 N.W.2d 88, 91 (Mich. 2000)).  DeBusscher was clearly an invitee.  "An invitee is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception." *Stitt*, 614 N.W.2d at 92 (quotation marks omitted, brackets in original).

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v. Ameritech Corp., Inc.*, 629 N.W.2d 384, 386 (Mich. 2001).  This duty does not extend to open and obvious dangers, however, unless a special aspect of the open and obvious condition renders it unreasonably dangerous. *Id*.  Open and obvious dangers are ones that are "known to the invitee or are so obvious that the invitee might reasonably be expected to discover them," and from which "an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Id*.

In the present case, an invitee such as DeBusscher would reasonably expect that the basketball goal had been secured before being placed on display, such as by filling its base with a ballast of sand or water. The record establishes that there were no warning signs on the basketball goal or any other notification to customers that the base of the goal was not properly filled or otherwise secured. But the record also establishes the fact that Sam's East knew that customers might adjust or otherwise make contact with the basketball goal. Short of opening the base to determine that it was properly filled, a customer such as DeBusscher would have no way to know whether the basketball goal at Sam's East was stable. The basketball goal, therefore, did not constitute an open and obvious danger under Michigan law. Sam's East accordingly owed a duty of care to DeBusscher regarding the basketball goal.

According to DeBusscher, Sam's East breached this duty when the basketball goal fell on her after her son Nathan touched it. Fred Heck, the merchandise manager responsible for the basketball goal and similar items, admitted in his deposition that he had not personally checked the basketball goal's base to see if it was filled with a ballast of sand or water, that he had never directed any other employee to check the base, and that he had not checked after the accident to see if the base had a proper ballast. In fact, the apparent strategy of Sam's East was to place a 55-gallon bucket of pool chemicals on top of the base to provide stability rather than to monitor the level of the ballast inside the base. The use of the 55-gallon bucket of chemicals to secure the basketball goal strongly suggests that Sam's East had actual or constructive notice that an unsecured basketball goal, and specifically the basketball goal in question, presented a risk of falling and potentially injuring employees or customers in the vicinity.

Despite the negative impact of these facts on Sam's East, DeBusscher's claim is weakened by the near-total lack of admissible evidence supporting the argument that Sam's East breached its duty to secure the basketball goal. The strongest evidence that DeBusscher offers in support of her claim is Heck's deposition testimony. Although DeBusscher contends that her son Nathan informed her after the incident that he had "touched" the goal immediately before it fell, this statement is inadmissible hearsay. Nathan is in fact the only witness with firsthand knowledge of what caused the basketball goal to fall, yet DeBusscher's counsel inexplicably failed to include *any* testimony from Nathan in the record. As the district court properly noted, this oversight significantly weakens DeBusscher's argument.

Drawing all reasonable inferences in favor of DeBusscher, however, we find that she produced sufficient evidence to survive the motion for summary judgement against her. DeBusscher's claim is essentially a res ipsa loquitur claim based on the following syllogism: properly secured basketball goals do not fall over in ordinary circumstances, whether or not touched by a seven-year-old child; this goal did fall over; therefore, it must not have been properly secured.

The Michigan Supreme Court has previously issued somewhat ambiguous statements regarding the doctrine of res ipsa loquitur. *Compare Mitcham v. City of Detroit*, 94 N.W.2d 388, 393 (Mich. 1959) (concluding that "[b]y whatever euphemisms we may choose to call it, we suspect that res ipsa loquitur is here to stay"), *with Wilson v. Stilwill*, 309 N.W.2d 898, 905 n.5 (Mich. 1981) ("Michigan has not formally adopted the doctrine of res ipsa loquitur. However, the underlying concepts of res ipsa loquitur, which are circumstantial evidence and negligence concepts, have been applied in Michigan."). Nonetheless, in 1987, the Michigan Supreme Court formally recognized what had become a practical reality:

> Whether phrased as res ipsa loquitur or circumstantial evidence of negligence, it is clear that such concepts have long been accepted in this jurisdiction. The time has come to say so. We, therefore, acknowledge the Michigan version of res ipsa loquitur which entitles a plaintiff to a permissible inference of negligence from circumstantial evidence.

*Jones v. Porretta*, 405 N.W.2d 863, 872 (Mich. 1987) (quotation marks omitted).

"The major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." *Id.* Under Michigan's version of the doctrine of res ipsa loquitur, the plaintiff must establish that

(1)     [t]he event must be of a kind which ordinarily does not occur in the absence of someone's negligence[,]

(2)     [t]he event must have been caused by an agency or instrumentality within the exclusive control of the defendant[,]

(3)     [t]he event must not have been due to any voluntary action or contribution on the part of the plaintiff[, and]

(4)     [e]vidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.

*Wilson*, 309 N.W.2d at 905 (concluding that the plaintiff in a medical malpractice claim had not established a prima facie case of negligence by the defendant hospital).

In the present case, the basketball goal was on display in a Sam's Club store. Evidence in the record demonstrates that Sam's East knew that customers might touch the basketball goal in some manner and that the base of the basketball goal required a ballast in order to be stable. Moreover, a basketball goal should not tip over simply because a seven-year-old child touches it. This fact was directly conceded by Heck in his deposition:

Q:     Is [a seven-year-old child] supposed to be able to tip over a basketball post like that?

A:     No.

The record also indicates that DeBusscher herself did not contribute to the accident. She testified that she had lifted her daughter, Autumn, and set her in front of the shopping cart immediately prior to the basketball goal falling upon her. Under these circumstances, evidence of the true explanation for the accident was more readily accessible to Sam's East than to DeBusscher. The store maintained exclusive possession of the basketball goal both before and after the accident, removed it from the display floor after it fell on DeBusscher, and sent it to the Claims Department. Checking the ballast level would have been a simple enough matter, but Heck testified that he did not undertake even this basic investigative task.

Accordingly, despite her counsel's failure to include in the record readily available and admissible evidence of causation, DeBusscher has made the required showing for a claim of res ipsa loquitur. This showing renders the district court's grant of summary judgment erroneous. The fact that a portable basketball goal on display in a store should not fall over if properly maintained, even if "touched" by a seven-year-old child, raises an inference of negligence on the part of the store and shifts the burden of rebutting that inference to the defendant. *See Woodard v. Custer*, 702 N.W.2d 522, 525 n.2 (Mich. 2005) (applying the doctrine of res ipsa loquitur in a medical malpractice case).

Moreover, even if we were to analyze DeBusscher's claim solely under the state's premises-liability standard, summary judgment was improper. In a Michigan premises-liability action for negligence, a plaintiff must provide evidence of a defect in order to establish factual and proximate causation for the injury. *Sparks v. Wal-Mart Stores, Inc.,* 361 F. Supp. 2d 664, 671 (Mich. 2005). The district court provided an extended, but ultimately excessively dismissive, discussion of the ways in which it concluded that DeBusscher failed to establish that Sam's East caused the accident that injured her.

But DeBusscher in fact did provide sufficient evidence that Sam's East and its employees failed to monitor the ballast level in the base of the basketball goal and that store employees knew that the base required ballast in order to be properly secured. Heck testified at his deposition that he knew that the basketball goal needed to be secured with ballast in order to be stable. He further stated that, despite being the merchandise manager responsible for the basketball goal, he did not check the ballast level either before or after the accident.

Viewing this evidence in the light most favorable to DeBusscher, as we must do when considering the store's motion for summary judgment, a reasonable inference can be drawn that the basketball goal fell because its base was not properly secured. A reasonable factfinder could thus determine that an improperly filled base created a safety hazard within the store that was the proximate cause of DeBusscher's injuries.

In reaching this conclusion, we do not mean to imply that a jury will necessarily find for DeBusscher. She might or might not prevail on the merits. But we do conclude that the district court erred in ruling on these facts that no reasonable jury could find in DeBusscher's favor.

## III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.