NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0731n.06

10-1484

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Oct 26, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| KELLY HOLLERBACH, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| TARGET CORPORATION, | ) | **OPINION** |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | |

**Before: MARTIN, CLAY and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Plaintiff Kelly Hollerbach (Hollerbach) appeals from the district court's grant of summary judgment to defendant Target Corporation (Target) dismissing her negligence (premises liability) claim in this diversity case. We **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

**I.**

The facts, viewed in the light most favorable to Hollerbach are that Hollerbach was at a Target store in Rochester Hills, Michigan, in the late morning of June 23, 2006, to exchange a basket she had purchased. Hollerbach ended up in a clearance aisle where home-goods items were displayed, including a basket on a lower shelf. As Hollerbach stood looking at the basket, two large wooden (or wood-like) picture frames hanging on display above the basket fell, and the fixture/hook

1

from which they hung came out of the display wall as well. The two frames landed on Hollerbach's left big toe. She was wearing sandals, and the excruciating pain caused her to fall to the ground.

Hollerbach testified that she was not interested in, nor looking at, the picture frames before or during their fall, had not touched them before they fell, and had no idea why they fell. She testified that there were two sets of hanging frames above the basket – the two frames that landed on her toe hung from a fixture/hook on the right, and were "definitely in front of" a frame or frames that hung from a fixture on the left. The fixture on the left was attached to the wall in very close proximity to the fixture on the right and, in Hollerbach's photographs taken the evening of the incident, a framed photo of Audrey Hepburn is hanging from the left fixture. Hollerbach's photographs show that the non-offending hook hung at a slight downward slant.

A Target employee who was summoned following the incident asked Hollerbach to go to Guest Services, where an employee and, later, Target team-leader-on-duty (LOD) Laura-Marie Mehling, spoke to Hollerbach. Mehling, the only LOD at the store that day, wrote in her incident report,"The guest was looking at pictures and they fell off the peg hook and fell on her toe."

Mehling took several photographs as part of her investigation of the incident, but photographed Target's regular picture frame aisle,[1] not the clearance aisle where the incident occurred. Hollerbach returned to the Target store that evening after work, took photographs of the shelving and wall in the home-goods clearance section, and then went to the hospital.

---

[1]Mehling testified that Hollerbach told her that she was injured in "the picture frame aisle," which was in the home-goods section near the clearance section at issue.

2

**A.**

Following discovery, Target moved for summary judgment under Federal Rule of Civil Procedure 56, arguing that Hollerbach's claim should be dismissed because 1) Hollerbach had no explanation of why the fixture from which the picture frames hung came out of the wall, thus her claim was "based on impermissible speculation," and 2) that Target owed her no duty because a) there was no evidence that Target either created or was on notice of the allegedly defective condition, and b) the condition Hollerbach claimed created a hazard would have been open and obvious to the casual observer and was seen by Hollerbach.

Concluding that Target did not have constructive notice of the allegedly defective condition and that the condition was open and obvious, the district court granted summary judgment.

**II.**

This court reviews *de novo* the district court's grant of summary judgment. *DeBusscher v. Sam's East, Inc.*, 505 F.3d 475, 478 (6th Cir. 2007). Summary judgment is proper where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The district court must construe the evidence and draw all reasonable inferences in favor of the nonmovant. *DeBusscher*, 505 F.3d at 478-79.

Because this is a diversity case "we apply state law in accordance with the controlling decisions of the state supreme court." *Id.* at 479 (quoting *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)).

**A.**

In Michigan, "[p]remises liability is a specific type of negligence claim based on an injury that arises out of a condition on the property as opposed to an injury arising out of the activity or

3

conduct that created the condition." *Id.* (citing *James v. Alberts*, 464 Mich. 12, 18-19, 626 N.W.2d 158, 162 (2001)). To establish a *prima facie* case of premises liability, a plaintiff must establish that 1) the defendant owed the plaintiff a duty, 2) breach of that duty, 3) an injury proximately resulting from that breach, and 4) damages. *Fultz v. Union-Commerce Assoc.*, 470 Mich. 460, 463, 683 N.W.2d 587, 590 (2004).

A premises possessor's duty to a visitor depends on the visitor's status: trespasser, licensee, or invitee. *James*, 464 Mich. at 19, 626 N.W.2d at 162. In the instant case, there is no dispute that Hollerbach was Target's business invitee.

> The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. Thus, an invitee is entitled to the highest level of protection under premises liability law.

*Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 597, 614 N.W.2d 88, 92 (2000); *see also Banks v. Exxon Mobil Corp.*, 477 Mich. 983, 725 N.W.2d 455 (2007) (premises possessor owes business invitee duty to exercise reasonable care to protect her from unreasonable risk of harm caused by dangerous condition on the land).

The premises possessor's duty does not extend to open and obvious dangers, i.e., dangers that are "known to the invitee or are so obvious that the invitee might reasonably be expected to discover them." *DeBusscher*, 505 F.3d at 479, quoting *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516, 629 N.W.2d 384, 386 (2001).

### B. Notice

A premises owner's duty to an invitee "arises when the defendant has actual or constructive notice of the condition." *Banks*, 477 Mich. at 983, 725 N.W.2d at 455 (citation omitted).

4

It is the duty of a storekeeper to provide reasonably safe aisles for customers and he is liable for injury resulting from an unsafe condition either caused by the active negligence of himself and his employees or, if otherwise caused, where known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have had knowledge of it.

*Clark v. Kmart Corp.*, 465 Mich. 416, 419, 634 N.W.2d 347, 348-49 (2001) (quoting *Serinto v. Borman Food Stores*, 380 Mich. 637, 640-41, 158 N.W.2d 485, 486 (1968) (internal quotations and citation omitted, emphasis removed)).

Constructive notice may arise not only from the passage of time itself, but also from the type of condition involved, or from a combination of the two elements. Generally, the question [] whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law.

*Banks*, 477 Mich. at 983-84, 725 N.W.2d at 455 (citations omitted).

The notice doctrine does not shield a premises possessor from liability from injury where the premises possessor himself unreasonably creates, tolerates or causes a dangerous condition. *See Clark*, 465 Mich. at 419, 634 N.W.2d at 348-49. That is, knowledge of a hazardous condition created by a premises possessor may be inferred. *Hulett v. Great Atl. & Pac. Tea Co.*, 299 Mich 59, 66-67, 299 N.W. 807, 810 (1941) ("Defendant could not by its own act create a hazardous condition and then demand that plaintiff, who was injured as a result thereof, prove it had knowledge of such condition. Knowledge of the alleged hazardous condition created by defendant itself is inferred."); *Cerrito v. K-Mart Corp.*, No. 294660, 2011 WL 1519649, at *3 (Mich. App. Apr. 21, 2011) (unpublished) (quoting same from *Hulett*); *Stephenson v. B.I.G. Enters., Inc.*, No. 280778, 2008 WL 4899350, at *2 (Mich. App. Nov. 4, 2008) (unpublished) ("As our Supreme Court has explained, it is typically not necessary for a plaintiff to prove that the defendant had actual or constructive notice of a hazardous condition where the defendant or its agents actively created the hazardous condition

5

. . . . This is because knowledge of the alleged hazardous condition created by the defendant itself is *inferred*." (citing and quoting *Hulett*, 299 Mich at 66, 67 (internal quotations and citations omitted)).

**III.**

At the hearing on Target's motion for summary judgment, the district court determined that the defective condition was the slight downward slant of the non-offending fixture/hook, i.e., the fixture on the left from which the Hepburn framed photo hung, not the fixture that fell. From there, the court went on to determine that Hollerbach had seen the non-offending fixture/hook, that its slant was open and obvious, and that she thus should have appreciated the danger that frames may fall.

**A.**

The district court improperly concluded that Target did not have notice of the allegedly defective condition. Target presented no evidence that a third party such as an outside vendor would have installed the clearance aisle display, positioned or affixed the fixtures/hooks, or placed or arranged the picture frames in the home-goods clearance aisle. The fact that the display wall from which the fixtures hung was covered with decorative backer paper supports that only a Target employee (as opposed to a customer) would have placed the fixtures into the wall unit, because a customer would have been unable to see that a pegboard was behind the backer paper. Further, Target presented no evidence from which a reasonable jury could find that a customer(s) repositioned the fixtures such that they were in close proximity; Hollerbach's photographs depict that the only tear in the backer paper was at the site of the offending fixture, and she testified that the tear in the backer paper was in the location of the offending hook. A reasonable jury could infer that had a customer pulled out either of the two fixtures and moved one or both, the backer paper would

6

otherwise be torn. A reasonable jury could thus infer that a Target employee installed and positioned the two fixtures.

Even if Target customers had removed and/or replaced *picture frames* on either of the fixtures, a reasonable fact-finder could nonetheless conclude that it was the fixture(s)' installation and/or placement in the pegboard wall, *coupled with* the hanging of heavy frames from the offending fixture, that led to Hollerbach's injuries – it was the fixture that detached itself from the wall unit, because the two frames hanging from it that fell on Hollerbach were too heavy and/or too large, and/or because the non-offending fixture was placed too close to it and the frames hanging from each fixture overlapped and were thus unstable.

Since a jury could conclude Target created or tolerated the condition, Target's knowledge of the condition may be inferred. *See Hulett*, 299 Mich. at 66-67, 299 N.W. at 810 (observing that it was not necessary for plaintiff to prove that defendant premises owner had actual or constructive knowledge of hazardous condition of its floor, as alleged negligence was act of premises owner in creating this condition); *see also Cerrito*, 2011 WL 1519649, at *3 (citing *Hulett*).

*Cerrito* is factually similar to the instant case and, although unpublished, applied well-settled Michigan law in reversing a grant of summary judgment to K-Mart on bases including that "a storekeeper who creates a hazardous condition may not escape liability on lack of notice grounds." *Cerrito*, 2011 WL 1519649, at *3. The plaintiff in *Cerrito*, like Hollerbach, was examining a statue on a lower shelf when the top half of an identical statue on a higher shelf fell and struck her in the face. *Id.* at *1. A K-Mart employee's incident report stated that inspection showed the statue's top piece was not secured to the bottom piece. Another employee testified, similarly to LOD Mehling in the instant case, that if he had been aware that a heavy item looked like it would fall off a shelf,

7

he would remove it.  K-Mart moved for and was granted summary judgment on bases including that

it breached no duty and lacked notice of the purported defect.  The Michigan Court of Appeals

reversed:

> Contrary to the circuit court's view, the evidence in this case rationally supports that K-Mart breached a duty of care by placing unstable merchandise on a shelf.  As a business invitee, Cerrito was "entitled to the highest level of protection" imposed under premises liability law.  *James v. Alberts*, 464 Mich 12, 20, 626 N.W.2d 158 (2001), quoting *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 597, 614 N.W.2d 88 (2000).
> . . . .
> On the basis of the customer incident report, the testimony of two K-Mart employees, Cerrito's testimony, and the fact that all the other statues comprised a single piece, a jury could reasonably infer that K-Mart bore responsibility for assembling the statues by affixing the top and bottom portions together with a screw . . . . A storekeeper's duty of care indisputably encompasses rectification of insecurely fastened items displayed on high shelves.  Here, a reasonable juror could conclude that K-Mart's neglect to attach the top of the statue to the bottom created an inherently unstable display that presented an unreasonable risk of injury if a shelving unit was bumped or otherwise moved.
>
> We additionally reject the circuit court's finding that no evidence substantiated that K-Mart knew or should have known about a potential statuary danger.  The customer incident report is wholly consistent with Cerrito's claim that a K-Mart employee negligently failed to bolt or screw together the upper and lower portions of the statue.  In *Hulett v. Great Atlantic & Pacific Tea Co.*, 299 Mich 59, 66-67, 299 N.W. 807 (1941), our Supreme Court held that a storekeeper who creates a hazardous condition may not escape liability on lack of notice grounds:
>
>> It was not necessary for plaintiff to prove defendant had actual or constructive knowledge of the hazardous condition of its floor, as the alleged negligence was the act of defendant in creating this condition. Defendant could not by its own act create a hazardous condition and then demand that plaintiff, who was injured as a result thereof, prove it had knowledge of such condition.  *Knowledge of the alleged hazardous condition created by defendant is inferred*.

*Cerrito*, 2011 WL 1519649, at *2-3 (emphasis added).

8

Given that Target presented no evidence to support that anyone other than a Target employee installed the clearance-aisle display and the fixtures/hooks from which the frames hung, a reasonable jury could conclude that the alleged negligence was Target's in creating or tolerating the condition. Target was thus not entitled to summary judgment.

**B.**

Challenging the district court's determination that the defective condition was open and obvious, Hollerbach argues that she did not testify that she saw either of the fixtures/hooks.

Hollerbach testified on deposition that the two frames that fell from the offending fixture were hanging *in front of* the frame(s) hanging from the fixture that remained in the wall. This is consistent with her photographs, which show that the Hepburn framed photo hanging from the non-offending fixture is resting on the shelf and that its bottom is inside a tray-like object or resting on it, that is, it is not simply suspended from the left fixture. R. 21-6. There is no evidence that the frames that fell on Hollerbach were either resting on the shelf or had their bottoms inside a tray, rather, her testimony was that they were hanging. More importantly, Hollerbach also testified that the fallen frames were the size of or slightly larger than the Hepburn framed photo shown in her photographs. Thus, the fixture the district court identified as the defective condition *would not have been visible to Hollerbach*, it would have been blocked by the frames hanging on the offending fixture. A reasonable jury could infer from Hollerbach's deposition testimony and her photographs that the non-offending fixture (and its slight downward slant) would not have been visible to Hollerbach.

In any event, even if Hollerbach had seen the non-offending fixture hanging at a slightly downward slant, Hollerbach's remaining argument – that the district court erroneously assumed that

9

because the non-offending fixture/hook (holding the Hepburn frame) depicted in Hollerbach's photographs slanted slightly downward and/or was pulling away slightly from the wall, the offending fixture must have been in the same condition – has merit. There was no evidence of the condition of the offending fixture/hook before the accident; there is no record that anyone examined, picked up or preserved either the fallen fixture or the fallen picture frames.

Moreover, given Hollerbach's uncontradicted deposition testimony, even if the defective condition was the non-offending fixture's hanging at a slight downward slant, and even if the offending fixture similarly was at a slight downward slant, a reasonable juror could have inferred from the evidence of record that the hazard that the hook might come out of the wall was not open and obvious, that is, not readily apparent or easily discoverable upon casual inspection. *Glittenberg v. Doughboy Recreational Indus.*, 441 Mich. 379, 393-94, 491 N.W.2d 208, 214-15 (1992).

For these reasons, we **REVERSE** the grant of summary judgment to Target and **REMAND** for further proceedings.